PAPIN, Plaintiff in Error, v. HINES, et al., Defendants in Error.

1. The inhabitation, cultivation and possession required by the act of Congress of June 13th, 1812, are actual possession, &c.
2. It is a fatal objection to a claim of title under this act, that it does not appear from the report of the commissioners that the concession contained a special location, or that it had been actually surveyed before March 10th, 1804, by a surveyor duly authorized by the government making the grant.

3. The act of Congress of April 12th, 1814, does not, *proprio vigore*, confer a legal title.

4. In a suit brought by A., claiming under the act of July 4, 1836, against B., claiming under a patent dated June 15th, 1826, it will be of no avail to A. to prove that the land sued for is embraced within the outboundary line of the town of St. Louis. The patent will, in such a contest, prevail over the confirmation.

*Error to St. Louis Land Court.*

The facts sufficiently appear in the opinion of the court.

*Reber* and *Buckner*, for plaintiff in error, cited Gamache v. Pequinot, 17 Mo. 310, 325 ; City of St. Louis v. Toney, 21 Mo. 243.

*Shepley* and *Todd*, for defendant in error, cited Sarpy v. Papin, 7 Mo. 503 ; Menard's heirs v. Massey, 8 How. 293 ; Burgess v. Gray, 16 How. 48.

RYLAND, Judge, delivered the opinion of the court.

The plaintiff claims the land involved in this controversy under three different and independent confirmations, which he alleges were made of the Spanish title of Joseph Brazeau. He asserts that the tract, including the land in dispute, was a lot belonging to the town of St. Louis, possessed by Brazeau prior to the 20th of December, 1803, and that his title thereto was confirmed by the act of 13th June, 1812. He next asserts that if Brazeau's title was not confirmed by the act of 1812, the claim was so spread upon the report made to Congress by the commissioners of the first board, that it was confirmed by the act of 12th April, 1814 ; and lastly, he asserts that the title of Brazeau was confirmed by the act of 4th July, 1836. The defendants claim the possession of the land under a patent issued by the United States on the 15th June, 1826, under an entry in the land office.

We will examine the different pretensions set up by the plaintiff under the several confirming acts of Congress. We have not here any recognition of the title to this tract of land by the United States authorities as a title confirmed by the act of

13th June, 1812, nor would it appear that any person inter-
ested in the claim ever supposed that the title was confirmed by
that act; but, on the contrary, both the claimant and the gov-
ernment evidently supposed that the title required a confirma-
tion by the board which was organized under the act of 1832;
for before that board the claim was presented by the claim-
ants, and the report upon it was confirmed by the act of July
4th, 1836.

It is apparent that Brazeau asserted before the first board of
commissioners three claims, and that the board acted upon them
as three distinct claims; the first for ten arpens in front on the
river, extending to the road to Carondelet, as conceded to him
in 1786; the second for two arpens in front on the river, with
the same depth, which he had acquired from Benito Vasquez;
and the third for an augmentation, conceded to him in 1799.
The first of these claims was approved of and ordered to be
surveyed; the second was at first rejected, but afterwards or-
dered to be surveyed; and both were afterwards regularly sur-
veyed for him by the authorities of the United States. The
claim under the concession of 1799 was rejected, and this is the
claim which includes the land in controversy. The evidence
shows possession of the first two tracts under the Spanish gov-
ernment and continued cultivation; but, in respect to the land
included within the concession of 1799, there is no evidence of
possession.

The confirming act of 13th June, 1812 rests upon the ac-
tual possession, for that is the sole consideration which in-
fluenced Congress to make the confirmation. It is not a
question, under that act, whether the claimant had a concession
from the Spanish government or not; or whether there was a
survey under that government or not. If there was a lot in-
habited, cultivated or possessed coming within the designation
contained in the act, it was confirmed without any regard to
Spanish title. The possession, then, was not to be a posses-
sion inferable from title, but an actual possession — *possessio
pedis*. In order to answer this demand of the act, resort is

now had to the actual possession of the land east of the Caron-delet road, and acted upon by the first board of commissioners as aforesaid, the virtue of which is to be transferred to the land included in the concession of 1799. But if we bear in mind that the act of 1812 does not rest upon written evidence of Spanish title, and that at the date of that act the claims of Brazeau were not only separate by the mode in which they were presented and prosecuted before the board of commissioners, but were further separated by the action of the board as afore-said, we will find that the act of 1812 never contemplated the confirmation of a tract of land separately granted and claimed, and of which there had been no actual possession. The pos-session of the land east of the road had been established before the commissioners, and had had its influence in producing the action they had taken thereon, but had no influence with them in relation to the distinct claim west of the road. To interpret the subsequent act of 1812, so as to give a title to this land without an actual possession of it, would be to give the land without the consideration which prompted to the passage of the act. This view dispenses with the consideration of all ques-tions as to whether a tract of land, which has never been recog-nized by the United States as a lot upon which the act of 1812 operated, and which has never been claimed under that act, can be now supposed to be confirmed by that act merely because it is included within the outboundary line. The claim can not be regarded as confirmed by the act of June 13th, 1812.

I will next consider the confirmation alleged to have been made by the act of the 12th April, 1814. This act provides for the confirmation of claims under incomplete French or Spanish grants or concessions, warrants or orders of survey granted prior to the 10th March, 1804, to persons residents of Loui-siana, where the claims have been filed with the recorder ac-cording to law, and are embraced in the report of the commis-sioners, *where it shall appear by the report of the commis-sioners* that the concession, warrant, or order of survey, under which the claim is made, contains a special location, or had been

actually located or surveyed before the 10th March, 1804, *by a surveyor duly authorized by the government making such grant.* The act, after describing the claims upon which it is intended to operate, declares that the claimants " shall be and they are hereby confirmed in their claims." There are to the first section, which is the only one applicable to this case, several provisos, one of which declares that the section shall not be held to confirm the claim of any person in his own right, who has received in his own right a donation grant from the United States in the territory. The second section applies to certain claims to donations under the laws of the United States, which are claims founded upon actual settlements. This section has no relation to claims such as Brazeau's. The third section of the act makes it the duty of the recorder, who was in possession of the records of all claims regularly filed, as well as those which had been confirmed, and those which remained unconfirmed, to issue to the surveyor orders of survey for such claims, confirmed by the act, as required surveys to be made, and to give certificates of confirmation upon the return of the surveys ; and also to issue certificates of confirmation in cases where no survey was required. These certificates of confirmation entitled the parties to patents for the land, " if it should appear to the commissioner of the general land office that such certificates had been fairly obtained according to the true meaning and intent of the act."

There are two objections to the claim now set up by the plaintiff under the act ; the first is that the report of the commissioners does not show that the claim of Brazeau contained a special location, or that it had been actually surveyed before the 10th March, 1804, by a surveyor duly authorized by the government making the grant. It is evident that if a party can be permitted to assert a claim under this act without any evidence of title having been issued by the land department, it must be by showing that the claim comes within the language of the act. All that the act requires to be shown by the report, in order to a confirmation of a claim, must appear upon the

face of the claim itself, and is not to be shown by extrinsic evidence. The report and the act form the claimant's title. In this case, the report, so far as we see the proceedings of the board of commissioners, states the date of the concession and the date of the survey, but does not show by whom the survey was made ; so that the report does not, according to the requirement of the act, show " that the claim was actually located or surveyed before the 10th day of March, 1804, *by a surveyor duly authorized by the government making the grant.*" This is a fatal objection to a title which depends upon the act and the report for its legal effect.

The second objection is, that this act never contemplated the assertion of a title under it, without the documentary evidence which is to be issued by the officers of the land department. The act of 13th June, 1812, confirms claims by its own force, and makes no provision for the future examination of the claims or the issuing of any evidence of title by any of the officers of government. It is the universal understanding that this act completes the title by its own terms, and leaves the facts, by which the grantee is to be ascertained, to be proved by witnesses. But the act of 12th April, 1814, not only provides for an order of survey and a certificate of confirmation, but makes the completion of a title by the issuing of a patent to depend upon the commissioner of the general land office being notified that the certificate of confirmation was fairly obtained. These provisions of the act evidently intend to keep in the hands of the land department of the government the power to determine upon the question whether each particular claim comes within the confirming force of the act ; and this is more evidently the meaning of the act, when we find that the provisos to the first section (which is the section applicable to Brazeau's claim) except from the confirming language of the section, not only claims which had been adjudged by the board to be antedated or fraudulent, and claims for a larger quantity than a league square, but also the claims of persons who, in their own right, had a donation grant from the United States.

The recorder, who was in possession of the records of all claims filed, and of the decisions of the board thereon, could ascertain, by reference to the records in his possession, whether a claim had been adjudged to be antedated or fraudulent, and he could ascertain whether the claimant had received a donation grant in the territory. Upon such investigation as he was to bestow upon each claim, he was to issue his certificate of confirmation, and still the claimant, after obtaining such certificate, was to satisfy the general land office that the certificate was fairly obtained. To construe this act so as to give it the force of the act of 1812, and make it operate a confirmation by its own terms, without regard to the action of the Land Department, would be to substitute the action of the judiciary for the action of the executive department, which the act evidently designed to entrust with the examination and completion of the title. Such construction would be repugnant to the obvious design of the act. The claim of Brazeau can not be treated as a claim confirmed by the act of 1814.

I will consider now the confirmation of the claim under the act of 4th July, 1836. As the defendants have exhibited a patent issued by the United States in 1826, upon a sale of the land in controversy, it might be sufficient to dismiss this question by saying that the second section of the act of 1836 has been adjudged by the Supreme Court of the United States to afford protection to all who previously purchased land against the claims confirmed by that act. But it is now alleged by the plaintiff that the land in controversy is within the outboundary of the town of St. Louis, and consequently never was subject to sale or entry. It is not easy to perceive how this fact can benefit the plaintiff. He must recover upon the strength of his own title, and if the defendant's title is valid against him, it will not help him in the action to show that there may be another and third party, who may set up another and distinct title against the defendant. The lands included within the outboundary of the town were only withdrawn from sale, because they were either confirmed to individuals or reserved for

the use of schools. A reservation for the use of schools can not be set up against the patent of the government by a plaintiff who has no connection with or title under that reservation. It could not benefit him even if he could show that there had been a regular designation and setting apart of the land for the support of the schools. Such designation certainly would not strengthen his title. The case, then, in this branch of it, is to be regarded as depending upon the plaintiff's confirmation under the act of 1836 and the defendant's patent of 1826, and, as such, it is disposed of by reference to the case of Menard v. Massey. I am therefore for affirming the judgment of the Land Court; and, the other judges concurring, the same is accordingly affirmed.