CABANNÉ *et al.*, Plaintiffs in Error, v. WALKER, Defendant in Error.

1. The rule requiring depositions taken in another cause to be filed before they are read, may be dispensed with when the ends of justice require it. When the evidence would operate as a surprise, the rule should not be suspended, except on terms which would not work injustice; but if the evidence is merely cumulative and will not surprise, the rule may be dispensed with.

Cabanné v. Walker.

2. The evidence taken before the board of commissioners organized under the act of Congress of July 9, 1832, (4 U. S. Stat. 565,) can not be admitted in evidence in another suit, in proof of the inhabitation, cultivation or possession necessary to show a confirmation under the act of 1812.
3. The act of Congress of July 4, 1836, only gives title from its date, and does not operate retrospectively and give title from the passage of the act of July 27, 1832, organizing the board of commissioners.
4. By the act of Congress of January 27, 1831, the United States relinquished all their right, title and interest in the lands reserved for schools by the act of 1812.

### Error to St. Louis Land Court.

This was an action of ejectment, instituted in February, 1855, to recover from defendant a tract of land in the lower part of the city of St. Louis. In support of their claim, the plaintiffs showed a confirmation to the representatives of Pierre François Devolsey, by the act of July 4, 1836, of a tract of land six arpens in front by forty arpens in depth. The record of the proceedings of the commissioners, reporting the same for confirmation, shows a concession to Devolsey of such a tract of land, made September 15, 1767. In these proceedings is the testimony of Pierre Chouteau, sr., and Laurent Reed. Chouteau testifies "that Devolsey did not settle himself upon said land" at the time of its concession to him, through fear of the Indians, "but cut his wood and made his hay on the same; that any one who wanted to cut timber on the same, had to ask Devolsey's permission." Reed testified that he knew Devolsey, who died about forty years before; (this evidence was given February 15, 1833;) that he knew that one of Devolsey's negroes cultivated a small field in the Little Prairie, but does not remember exactly the place; that said negro cultivated tobacco, melons, and other articles of produce." Plaintiffs showed a United States survey of said tract, made by virtue of said confirmation. It includes the land in suit, which is at its eastern end. Plaintiffs showed a title in themselves to this confirmation by derivation from said Devolsey. Defendant's possession was admitted. The defendant then offered the following evidence: He showed the land in suit to have been sec-

tionized by the United States, and afterwards entered with the register and receiver of the public lands at St. Louis, and paid for by Joseph Papin, and a United States patent issued to him therefor, dated June 15, 1826; a deed from Joseph Papin and wife to Larkin Deaver, of this land, dated October 30, 1832, and recorded November 14, 1832; a deed from Deaver and wife to Isaac Walker for this land, dated September 25, 1833, and recorded October 10, 1833; a deed from Walker to Spier and Bull, of this land, in trust for the wife of said Walker, dated October 17, 1846, and recorded October 24, 1846. The defendant also gave in evidence a confirmation to Joseph Brazeau, under the act of July 4, 1836, of a tract of land embracing this in suit, predicated upon a concession to him thereof, made November 19, 1799; also a United States survey thereof under said confirmation. The commissioners recommended Devolsey's for confirmation, November 8, 1833, and Brazeau's, November 11, 1833. It was shown that this land was within the outboundaries of the old town of St. Louis. Plaintiff offered to read the depositions of said Chouteau and Julius De Munn, taken in and for and used in the case of Joseph Papin against John B. Sarpy, instituted in the St. Louis circuit court, to recover this land in 1837, and taken in 1840; the plaintiff at the same time offering to prove that the defendant claimed the land under said Papin, and that said Sarpy represented the plaintiffs' title in said suit. The defendant objected thereto, which objection the court sustained, subject to plaintiffs' exception thereto. Chouteau, in said deposition, testifies "that Devolsey never occupied the land, but he got his wood and hay from it" in the years from 1767 to 1775; "that the inhabitants cut wood and hay wherever they pleased, but persons would be prohibited if it were necessary; that the heirs of Devolsey cut wood on the land of Devolsey, but whether on the east or west part, he could not say." Plaintiff then offered to prove by said deposition of said Munn, and by other evidence, that the land patented to Papin had been withdrawn from sale when it was entered in the name of

Papin; that its entry, and the patent therefor, were obtained by Papin by a fraud upon the United States, and that Deaver and Walker were cognizant of it when they respectively made their purchases and took their deeds. Defendant objected to this as irrelevant and incompetent, which objection the court sustained, subject to the plaintiffs' exception thereto.

At the request of the defendant, the court gave the following instruction: "If the jury believe the oral, written and documentary evidence given by the defendant to be true, the plaintiffs can not recover in this action."

The plaintiffs asked the court to give to the jury the following instructions, which the court refused: "1. If the jury find that there was confirmed to the representatives of Devolsey, under the proceedings of the late board of commissioners and the act of Congress of July 4, 1836, a tract of six by forty arpens, then such confirmation is conclusive evidence against the United States that the tract was rightfully claimed by said representatives; and furthermore, if the outboundary survey of St. Louis, established pursuant to the first section of the act of June 13, 1812, embraces the tract so confirmed, then such outboundary is conclusive evidence against the defendant that the tract was a town or village lot, out-lot, or common field lot, belonging to St. Louis on the 13th of June, 1812; and the title acquired by force of such confirmation and outboundary survey must prevail over an entry and patent subsequent to the 13th of June, 1812. 2. If the jury find that the land embraced in the entry and patent of Papin, under which the defendant claims, lies wholly within the outboundary of St. Louis, as established under the authority of the United States pursuant to the first section of the act of June 13, 1812, then the entry and patent were illegal and void, and no title passed by said entry or patent. 3. If the jury find that the land now in controversy is part of the tract confirmed to the representatives of Devolsey in 1836, and is within said outboundary of St. Louis, the title acquired by such confirmation is good

against a party in possession, holding only under the entry and patent of Papin. 4. If the jury find that the land now in controversy was part of a lot of six by forty arpens, granted by the French authorities to one Devolsey, and by him used and possessed prior to the 20th December, 1803, claiming to use and possess the same under said grant, and that said lot was one of a series of lots granted by the same authorities, lying side by side and being within the outboundary of St. Louis, established pursuant to the act of 1812, the said lot was confirmed to the representatives of Devolsey by the act of 13th June, 1812."

*Darby*, with *Krum & Harding*, for plaintiffs in error.

I. The court below erred in excluding the depositions taken in a former suit. 1. The leading purpose for which the depositions were offered was to prove a confirmation of the lot in controversy to the representatives of Devolsey, by the first section of the act of 1812. The deposition of Pierre Chouteau was full and complete. On the direct examination the witness said : " Devolsey never occupied the land, but he got 'his wood and hay from the same land." On the cross-examination the witness is more particular. He says : " Pierre Francis Devolsey cut wood and hay off the land above mentioned in the years 1767, '68, '69, '70, '71, '72, '73, '74, and '75." The witness afterwards says : " The heirs of Devolsey cut their wood and hay ; they cut wood on the land of Devolsey, but whether on the east or west part, I can not say." The proof here of possession prior to 1803 is much stronger than that adduced in the case of Soulard v. Clark, 19 Mo. 570, in which case this court established a confirmation to Cambas in the Little Prairie, the same series of lots to which the lot now in controversy belongs. In that case the only evidence of possession consisted in the declaration of a witness, that " her husband and Cambas picked wild grapes and cut wood and wild hay on the lot conceded to them prior to December 20, 1803." (See 19 Mo. 572.) 2. The depositions offered in evidence were taken in a suit

drawing in question the same title involved in the present suit and in respect to the same land. The parties, though nominally different, were substantially the same, or, in other words, were privies to the former suit. Papin, the plaintiff in the former suit, was the grantor of Walker, the defendant in the present suit. Sarpy, the defendant in the first suit, was the representative by tenancy of the ancestor of the plaintiffs in the present suit. Under such circumstances the rule of evidence is well established that depositions taken in one case may be read in the other. The court is referred to the following authorities: 1 Greenl. on Ev. § 553, 554; 2 Phil. Ev. Cow. & H. notes, 754, 438; Jackson v. Lawrence, 15 J. R. 544; Hacker v. Jamison, 2 Watts & S. 438; Osborn v. Bell, 5 Denio, 370; Clealand v. Huie, 18 Ala. 343; Long v. Davis, 18 Ala. 801; Bryant v. Owen, 2 Starr. & P. 134.) 3. The exclusion of the depositions, however, was placed in the court below simply on the ground that they had not been filed in the present suit, according to the requirements of the thirteenth section of the seventh article of the practice act of 1849. The decision of the court below was justified, or at least excused, by what fell from the court in the case of Samuel v. Withers, 16 Mo. 541. But it is well known that the doctrine of the case of Samuel v. Withers did not last a year. It was pointedly overruled in Gitt v. Watson, 18 Mo. 274. Since the decision of this last case in 1853, the practice of filing documentary evidence has been wholly abandoned. (Wood v. Fleetwood, 19 Mo. 529.)

II. The court below erred in refusing the instructions asked for by the plaintiffs. The first instruction contains two propositions that are incontrovertible. 1. That the confirmation by the act of July 4, 1836, is conclusive of the fact that the lot confirmed was rightfully claimed by the representatives of Devolsey. 2. That the fact of the lots being embraced by the outboundary run pursuant to the act of 13th June, 1812, is conclusive evidence against the defendant of its being a town or village lot, out-lot or common field lot belonging to St. Louis. The object of the two first

sections of the act of 1812 was to dispose of a mass of lots particularly enumerated in the act. The end was accomplished by confirming instantly all the lots possessed prior to December 20, 1803, and reserving such as were not rightfully claimed for the use of schools. All was disposed of, and from the nature of the act it results that there was nothing left which the officers of the government could sell. The outboundary survey exclusively established the location and extent of the mass of lots thus disposed of. (Mackay v. Dillon, 4 How. 421; Eberle v. Public Schools, 11 Mo. 264; Kissel v. Public Schools, 18 How. 19.) The entry in the name of Papin was a nullity and gave no title. (Kissel v. Public Schools, *ubi supra*.) The patent was in like manner void. (Stoddard v. Chambers, 2 How. 284.) The defendant is understood to rely on the second section of the confirming act of 1836, as expounded by the Supreme Court of the United States, in the case of Menard's Heirs v. Massey, 8 How. 310. But here it is conceived the law is misapplied. After the passage of the act of 1812, the question of title to the land embraced by the outboundary survey was only between the private claimants on the one side and the Public Schools on the other. No third party had or could acquire any interest in the question. The act of July 4, 1836, so far as it operated on the claims within the outboundary survey, was merely supplemental to the act of 1812. The doctrine of the defendant involves the absurdity of starting with the postulate that the land belongs to one of two persons, and ending with the conclusion that it belongs to a third person. The intent of the second section of the act of 1836 was to save the title of parties who had entered lands covered by claims that might never be confirmed, and in such event the lands would belong to the public and be properly subject to entry. Surely the intent does not extend to the present case, where the law had expressly declared that in no event could a title by entry be obtained; for if the private claim was not confirmed the land was to go to the Public Schools. The second and third instructions asked by the

Cabanné v. Walker.

plaintiffs below, are statements, in other words, of the propositions contained to the first. The fourth instruction declares correctly the facts and circumstances that work a confirmation under the first section of the act of 1812. This instruction was undoubtedly refused for the reason that the court below supposed, after the exclusion of Chouteau's deposition, there was no testimony in the case to support the instruction. But this was a mistake. The proceedings of the late board of commissioners on the claim of Devolsey was read in evidence; and those proceedings contained the testimony of witnesses proving the facts necessary to effect a confirmation of the claim by the act of 1812. It has been often decided that the testimony of witnesses taken before the recorder or the commissioners is of no avail as against a party claiming under a title older than the proceedings in which the testimony was taken. But it is believed that no case has yet arisen in which it has been held that testimony thus taken was inadmissible against a party who claims under a title subsequent in date to the proceedings. In the present case the defendant claims under a patent which, if valid at all, became so by force of the second section of the act of July 4, 1836. But the testimony in question was taken three years before in a regular judicial proceeding before commissioners, to which the United States were parties, and in which they nominated the judges. If testimony thus formally taken is not admissible in subsequent controversies in respect to the same subject matter, and after the witnesses are dead, there is an anomaly in the law deserving of a fuller judicial exposition than it has yet received.

III. The only instruction given in the case was the following, on motion of the defendant: " If the jury believe the oral, written and documentary evidence given by the defendant to be true, the plaintiffs cannot recover in this action." This instruction was vicious for its generality and indefiniteness. Neither the plaintiffs nor the jury could have extracted any intelligible proposition of law from it; nor can this court now ascertain on what ground the defendant prevailed,

except by conjecture. Perhaps, the court below considered the patent to Papin a sufficient defence. Perhaps, the outstanding title under the confirmation to Brazeau was regarded as a good bar to the action. And peradventure, the court below may have thought that the matters of fact put in evidence by the defendant through cross-examination of plaintiffs' witnesses constituted a good defence. The instruction leaves all in doubt and uncertainty. This court has often expressed pointed disapprobation of the practice of giving such general instructions, as imposing upon it the labor of trying the whole case on a writ of error. The practice is equally unjust to the adversary party ; for he is driven into the higher court without knowing from the record the ground on which he lost his cause in the court below.

IV. The court below committed error in excluding from the jury the testimony offered by the plaintiffs that the entry and patent, under which the defendant claimed, were obtained by fraud. The decision seems to have been grounded in the notion that a patent is of such solemn nature, and deserving of so much reverence, that all the world is estopped from saying that it was obtained by deception, simulation, trick, false suggestion, official perjury, or official corruption. But certainly such is not the law of the land. The dignity or solemnity of the transaction or instruments impeached for fraud, only renders the fraud with which it is infected more heinous, and more deserving of reprobation. The court has decided in many cases that a judgment in a court of justice which imports absolute verity may be attacked and overthrown by the allegation and proof of fraud. (Edgell v. Sigerson, 20 Mo. Rep. 494.) In Fletcher v. Peck, 6 Cranch, 87, the supreme court of the United States held that a grant obtained from a sovereign State through fraud and corruption practiced with the connivance of the Legislature, might be set aside. In United States v. Amistad, 15 Pet. 594, Judge Story, speaking for the court, said : "Fraud will vitiate any, even the most solemn transactions, and an asserted title to property founded upon it is utterly void."

In Stoddard v. Chambers, 2 How. 318, the rule is expressly applied to a patent. Judge McLean delivering the opinion of the court, said: "Fraud vitiates all transactions. It makes void a judgment, which is a much more solemn act than the issuing of a patent." In the earlier case of Bagnell v. Broderick, 13 Pet. 453, the same judge held that a patent obtained upon false suggestion might be avoided at law by the party entitled to the land. The majority of the court, however, held that a party claiming under a mere office location could not in a court of law attack a patent for fraud, for the reason that his title on its face did not purport to carry the fee of the land. The objection taken by the majority of the court in that case has no application to the case now before the court; for the plaintiffs here exhibit a complete and final title by act of Congress, which has always been regarded as of equal dignity with a patent.

*Todd & Shepley*, for defendant in error.

I. The patent to Papin gave a better title than the confirmation of July 4, 1836, gave to Devolsey's representatives. (Sarpy v. Papin, 7 Mo. 503, 505.) In this case Sarpy was in possession under said confirmation, and Papin sued him under said patent. The case decides that said confirmation was a mere gratuity, and that Sarpy stood, in relation to Papin, only upon his possession. (Papin v. Hines, 23 Mo. 274, 280, 281.) In this suit Papin sued Hines as a tenant of Walker for this same land, Papin claiming under the confirmation to Brazeau by the act of July 4, 1836, and Hines relying upon said patent to Papin. Upon the comparative merits of the two titles, the decision in this case is the same as in said case of Sarpy v. Papin. (See also Menard v. Massey, 8 How. U. S. Rep. 293, 310.)

II. As claimants under the said confirmation to Devolsey, the plaintiffs were not competent to impeach the entry and patent of Papin for irregularity or fraud. (Sarpy v. Pápin, 7 Mo. 503.) And as the plaintiffs in this case are not in possession, and as the legal title has passed into Papin, the

majority decision in the case of Allison v. Hunter, 9 Mo. 750, 758, 759, is applicable. The dissenting opinion in this case is fully so. (p. 763-4-5-6.) Besides, such a defence can not be made collaterally, in an action of ejectment, even by a proper party. (Hunter v. Hemphill, 6 Mo. 119; Allison v. Hunter, 9 Mo. 758; Maguire v. Vice, 20 Mo. 429.)

III. The depositions of Chouteau and Munn were properly excluded, because, among other reasons, they were neither filed in the case, nor notice thereof given to defendant before the trial was begun. (Samuel v. Withers, 16 Mo. 532.) This is a necessary rule of practice, and not founded upon any thing in the code of practice of 1849; it is of the spirit and policy of the act concerning depositions. (See R. C. 1845, p. 419, § 19.)

IV. The evidence before the commissioners of 1833, when considering the claim of Devolsey, is not admissible for the support of a claim under the act of June 13, 1812, and the legal effect of the instruction given was to exclude it. (Gamache v. Piquignot, 17 Mo. 310; Soulard v. Clark, 19 Mo. 578.) Besides, this evidence was taken subsequent to our patent. (See also St. Louis v. Toney, 21 Mo. 255, foot of page; Clark, v. Hammell, 27 Mo. 71; Williams v. Carpenter, 28 Mo. ——.)

V. If the evidence before the commissioners and the deposition of Chouteau were in the case, this would be all of the plaintiffs' evidence in support of a claim under the act of June 13, 1812; and this is not, in law, sufficient. (Sarpy v. Papin, 7 Mo. 507; Papin v. Hines, 23 Mo. 276, 277.) One of three facts must be proved. It is the deed, as it were, evidencing the title. They are facts *in pais*, not of law. (Guitard v. Strother, 16 How. 511, 512.) Each of them had a special application. The old inhabitants had, first, a town lot for inhabitation; second, a barn lot, for a barn enclosure; third, a field for cultivation. One of these must be shown, as an actual patent fact, *in pais*, and not by construction of law; and the spot and limits of such a fact, *in pais*, must be shown. The same vagueness or uncertainty

that would make a description in a deed void, would make void any attempt to prove a title under this act.

SCOTT, Judge, delivered the opinion of the court.

This was an action of ejectment, and of course, as the defendant was in possession, it became the duty of the plaintiffs to show a superior title to that set up by him in order to eject him.

The plaintiffs maintain that the defendant could not acquire a valid title to vacant land within the outboundary of the city of St. Louis, as surveyed under the act of 1812, by virtue of an entry and patent dated in June, 1826. If this is conceded, how do the plaintiffs stand under their confirmation by the act of July 4, 1836? Could that act give them any title to vacant land within the said outboundary? Was not such land as mrch protected from the operation of the act of July 4, 1836, as from the entry and patent of the defendant? We have held that where land is reserved from sale the title is still in the United States. The title to the school lands reserved by the act of 1812 we have said could pass by the act of the 29th of April, 1816. (Hammond v. Public Schools, 8 Mo.) But by the act of January 27, 1831, the United States relinquished all their right, title and interest in the lands reserved for schools by the act of 1812. How, then, could the act of July 4, 1836, pass a title to any of those lands? It has been held that this act only gives title from its date. But even if it operated retrospectively, and gave title from the passage of the act organizing the last board of commissioners, it would not affect this case, as that act was subsequent to the 27th January, 1831.

Considering the state of the law as to the question whether one trial in ejectment is conclusive, and that this is a case in which the unsuccessful party here may go to another tribunal, we are not satisfied that the court below exercised its discretion soundly in rejecting the depositions offered by the plaintiffs, as they were entitled to have their whole case

19—VOL. XXXI.

heard in the court of the last resort. We will not undertake to estimate the force of the rejected testimony. A party who insists on the rejection of evidence in the court where the trial takes place, stands in rather an awkward situation here in maintaining that such evidence is of no weight and that its rejection did not affect the result of the trial. The answer to such argument is obvious. If the testimony was of the character attributed to it, why object to it? It is obvious that the rule requiring depositions taken in another cause to be filed before they are read, is not an inflexible one, and may be dispensed with when the ends of justice require it. When the evidence can be met and would operate as a surprise on the opposite party, it would not be proper to depart from the rule but on terms which would effect justice between the parties; but if the evidence can not be met, if it is merely cumulative and will not surprise, why reject it?

We have never held that the evidence taken before the board of commissioners organized under the act of Congress of the 9th July, 1832, could be read in another suit, in proof of the inhabitation, cultivation or possession necessary to show a confirmation under the act of 1812. We know no principle that would warrant the admission of such evidence for such a purpose. Such a rule of evidence might lead to serious consequences. We do not see how the patent of the defendant is made dependent on the act of July 4, 1836, for its validity. If that patent is within the meaning of the second section of that act, it is then recognized as a valid instrument from its date.

We are not to be understood as expressing an opinion on the question whether the patent of the defendant conferred on him any title. We do not consider that is involved in the case. As the matter stood, we conceive that defendant's possession was a defence to the action.

Judgment reversed and remanded. Plaintiffs to pay costs of this court.