THE BOARD OF PRESIDENT AND DIRECTORS OF THE ST. LOUIS PUBLIC SCHOOLS, Plaintiff in Error, *v.* ISAAC WALKER and PATRICK RYAN, Defendants in Error.

1. *Lands and Land Titles—Reservation—Confirmations—School Lands—Patents.*—An inchoate claim to land duly located and presented to the Board of Commissioners under the acts of Congress of 1805 and 1807, and afterwards confirmed by the act of July 4, 1836, was excepted out of the reservation made for schools by the act of Congress of June 13, 1812, and was not granted by the act of June 27, 1831. After the claim has been surveyed under the confirmation, the Surveyor-General cannot survey and set apart the same land to the use of schools.

2. *Lands and Land Titles — Confirmations — Patents—Relation.*—As between the parties, a confirmation by the act of July 4, 1836, relates back to the date of the filing of the claim with the first Board of Commissioners, where the claim had a definite location; but where land confirmed by the act of July 4, 1836, had been previously sold and patented by the United States, as between the patentee and the confirmee the confirmation has no relation backward.

3. *Lands and Land Titles—School Lands—Entry—Sale and Patent—Ejectment —Outstanding Title.*—A party in possession of land under an entry, sale, and patent issued in 1826, may, against the claim of the St. Louis Public Schools under the acts of June 13, 1812, and January 27, 1831, set up as an outstanding title a claim and confirmation by virtue of the act of July 4, 1836. The confirmee, although by the terms of the act he cannot recover the land as against the patentee, still has a right to locate other lands in lieu of those sold, and his title is not absolutely void.

*Error to St. Louis Land Court.*

This was an action brought by plaintiff against the defendants at the March term, 1864, in the St. Louis Land Court, to recover a tract of land containing about thirteen acres in the southern part of the city of St. Louis.

To establish its title, the plaintiff gave in evidence the act of incorporation of the town of St. Louis, dated November 9, 1809; a survey of the outboundary line of the town of St. Louis, commonly known as map X; the act incorporating the plaintiff, and assignment and survey of the premises in controversy by the Surveyor-General to the plaintiff, made in 1861, being survey No. 407 for the St. Louis Public Schools. And the plaintiff proved further that the land in controversy

was within the limits of the survey of the outboundary line of the town of St. Louis, and that it was within the limits of the line of the corporation of the town of St. Louis as established by order of the St. Louis Common Pleas Court of November 9, 1809.

It was admitted at the trial that the defendants were in possession of the land at the time of the commencement of this action.

The defendants gave in evidence a patent from the United States to Joseph Papin, dated June 15, 1826; also a deed for the land described in the patent from Joseph Papin to Larkin Deaver, and a deed for the same premises to Isaac Walker, the defendant. The defendants also gave evidence tending to show that they had been in possession of the premises sued for more than twenty years before the commencement of this suit. The defendants also gave in evidence, as an outstanding title, the following documents:

1. A petition, dated November 19, 1799, of Joseph Brazeau to Delassus, the Spanish Lieut. Governor of St. Louis, praying for a grant of a tract of land, embracing the premises in controversy, as an addition to his farm.

2. A concession by Delassus of the land described in the petition, order of survey, and a survey made by the Surveyor of the Spanish Government.

3. Proceedings had on the 19th day of July, 1806, before the first Board of Commissioners created to adjust and confirm the claims of the inhabitants of St. Louis to lands therein. Joseph Brazeau presented the concession of Delassus and the Spanish survey, and asked a confirmation of his claim, which was rejected as "being unsupported by actual inhabitation and cultivation, and interfering with a tract of land claimed by the inhabitants of St. Louis as commons."

4. Proceedings had on the 19th of August, 1811, before the Board. Joseph Brazeau presented his claim for confirmation, which was again rejected.

5. Proceedings had on the 14th of March, 1833, before the Board of Commissioners, created by the act of Congress of

July 9, 1832. Brazeau presented his concession, survey, and proof. On November 11, 1833, the Commissioners decided that his claim ought to be confirmed.

6. U. S. survey No. 3,078, in favor of Joseph Brazeau or his legal representatives, made in May, 1857, in pursuance of the act of Congress of. July 4, 1836. The boundary lines of this survey embraced the land in controversy, but the certificate of the Surveyor-General, attached to the survey, expressly excludes from it the land in controversy, as land "sold or disposed of by the United States prior to the 4th day of July, 1836," and the certificate states that for the land thus excluded a certificate of new location was issued.

The defendants rested, and the plaintiff, in rebuttal, gave in evidence :

1. A certified copy of the certificate of re-location issued to Joseph Brazeau for the land excluded from survey 3,078.

2. The certificate of the Register of the Land Office at St. Louis, of the entry made by Joseph Papin of the land covered by his patent. The certificate is dated April 28, 1826.

3. An act of Congress for the relief of Phineas Underwood, approved May 22, 1826, the 2d section of which reads as follows : " *And be it further enacted,* That the time for filing petitions, under the provisions of an act entitled ' An act enabling the claimants to lands within the limits of the State of Missouri and Territory of Arkansas to institute proceedings to try the validity of their claims,' shall be and the same is hereby extended to the twenty-sixth day of May, in the year one thousand eight hundred and twenty-eight."

4. A series of letters of the Commissioner of the General Land Office to the Surveyor-General at St. Louis, showing the practice and rules of the Department, and parol testimony, which, under the ruling of the court, has no bearing on the case here presented.

It was then admitted by the defendants, that the assignment given in evidence by plaintiff and survey No. 407 had been approved and recorded by the Surveyor-General in his

office, and that no appeal was taken from his action by any of the parties interested.

The plaintiff then closed, and asked the following instructions:

1. The papers, documents and oral proof produced by plaintiff are *prima facie* evidence that the land in controversy has been legally surveyed, designated and set apart to the town (now city) of St. Louis for the support of schools therein.

2. The court, sitting as a jury, will find for the plaintiff if the court believes that the documents, papers, plats and surveys, given in evidence, are genuine; that the oral testimony offered by plaintiff is true, and that the land in contraversy is within the boundaries of the corporation of 1809, within the outboundary of December 8, 1840, and also within School assignment and survey No. 407, read in evidence.

3. If the land embraced within Papin's patent is within the limits of the outboundary survey given in evidence by plaintiff, it was reserved from sale and entry, and the patent is void, although at the time of the entry and the issuing of the patent the land had not been designated and set apart to the town of St. Louis for the support of schools therein.

4. If the land embraced within the entry and patent of Papin, under which defendants claim, lies wholly within the outboundary of St. Louis as established under the *authority* of the United States pursuant to the first section of the act of June 13, 1812; and if said land lies wholly within the limits of the assignment and survey No. 407, given in evidence by plaintiff, and if such assignment and survey is a genuine document, then the entry of, and patent to, Papin were illegal and void, and no title passed by said entry and patent.

5. The assignment of land and survey No. 407 for the Public Schools, given in evidence by plaintiff, creates a better title than, and must prevail over, any title derived from the patent issued to Papin in the year 1826, given in evidence by defendants.

6. There is no evidence in the cause tending to show that Brazeau's concession for 12 by 30 arpents was confirmed by operation of the act of Congress of June 13, 1812.

7. There is no evidence in the cause tending to show that the land in controversy was, on the 13th of June, 1812, "rightfully owned or claimed" by Brazeau or his legal representatives within the meaning of the act of Congress of June 13, 1812.

8. The concessions by Delassus to Brazeau and the survey by Soulard, given in evidence by the defendants, do not prove a "rightful ownership or claim" in Brazeau or his legal representatives to the land in controversy within the meaning of the second section of the act of June 13, 1812. To constitute such "rightful ownership or claim" there must be proof of cultivation, possession or inhabitation prior to December 20, 1803, by Brazeau or those under whom he claimed. And, in the absence of such proof in this case, the defendants have failed to show that the land in controversy was "rightfully owned or claimed" on the 13th day of June, 1812, within the meaning of the second section of the act of June 13, 1812.

9. The concession and order of survey made to Joseph Brazeau by Delassus in 1799, and the survey made in pursuance thereof by Soulard, as given in evidence by defendants, vested no title in Brazeau to the property so surveyed for him.

10. If the land in controversy was surveyed and sold to Papin by the United States prior to July 4, 1836, it was not confirmed to Brazeau by the act of July 4, 1836, although such survey and sale to Papin was not made in conformity with any law of the United States, and although such survey and sale were void as against the title set up by plaintiff.

11. Brazeau's survey having been recommended for confirmation by the Board of Commissioners "according to the concession" and not "according to survey," the survey by Soulard is not conclusive evidence of the extent of said confirmation, and the Government is not precluded by said

survey; and survey No. 3,078, given in evidence by defend-
ants, determines the right of the confirmee and of the de-
fendants in claiming an outstanding title in Brazeau's repre-
sentatives.

12. Survey 3,078 as approved by the Surveyor-General,
given in evidence by defendants, is conclusive and binding
on defendants as to the boundaries and quantity of land con-
firmed; and if the land in controversy is within one of the
reservations enumerated in said survey and the certificate
thereof, then the confirmation does not embrace the land so
enumerated as reserved.

13. The designation of land and survey No. 407 for the
Public Schools, given in evidence by plaintiff, creates a bet-
ter title than, and must prevail over, the title of Brazeau and
his representatives, emanating under the act of July 4, 1836,
as given in evidence by defendants.

14. If the land in controversy is within the limits of the
outboundary and assignment given in evidence by plaintiff,
then plaintiff is entitled to recover in the absence of proof of
inhabitation, cultivation and possession of the land in con-
troversy prior to December 20, 1803, or of a confirmation of
the same under any act of Congress passed prior to the 13th
June, 1812.

15. The court declares the law to be, that, although it
may appear from the evidence that the defendant Walker,
and those deriving title under him, have had exclusive ad-
verse possession, under a claim of ownership, since 1840, of
the land sued for; and although it may further appear that
the land in controversy has been since 1830 a tract of land
within specific boundaries and known location,—these facts,
if found, do not constitute a valid defence under the statute
of limitations, if it appears in evidence that the land in con-
troversy was surveyed, designated and set apart to the town
of St. Louis, for the use of the schools therein, within ten
years before the commencement of this action.

16. If the court believes from the evidence that all the
plats, documents, papers and other instruments read in evi-

dence by the parties respectively are genuine ; that the oral testimony given in the cause is true ; that the premises in controversy are within the boundaries of the outboundary survey of December 8, 1840, within the boundaries of the corporation of St. Louis as created on the 9th of November, 1809, and within the boundaries of the assignment to the plaintiff evidenced by survey No. 407,—the court will find for the plaintiff, although the court may also find that the land in controversy is within the boundaries of the patent from the United States to Joseph Papin, and within the boundaries of the U. S. survey No. 3,078.

17. Although the court may believe from the evidence that the land in controversy is embraced in the confirmation to Joseph Brazeau under the act of July 4, 1836 ; and although the court may believe that the claim so confirmed was presented for investigation thereof to the Board of Commissioners appointed by the act of Congress approved March 2, 1805, and was considered by said board, the court will still find for plaintiff if it appear from the evidence that the claim so presented was rejected by the board.

18. The proceedings of the late Board of Commissioners under the act of 1805, and the proceedings of the late Board of Commissioners under the acts of July 9, 1832, and March 2, 1833, recommending Brazeau's claim for confirmation, and the act of July 4, 1836, are not evidence that the land embraced in Brazeau's concession was rightfully owned or claimed by Brazeau or his representatives within the meaning of the act of June 13, 1812.

All of which instructions the court refused to give, to which action of the court plaintiff excepted.

The defendant then asked the following instructions :

1. If the court believes from the evidence that the land in controversy is embraced in the land confirmed to Joseph Brazeau by act of Congress of July 4, 1836, given in evidence, and that the claim to the land so confirmed was presented for the investigation thereof to the Board of Commis-

sioners appointed by the act of Congress approved March 2, 1805, given in evidence, and was considered by said board, then the court shall find for the defendants.

2. If the court believes from the evidence that the land in controversy is embraced in the patent to Papin given in evidence, and that said patent is genuine, then the court should find for the defendants.

The court refused to give said instructions for the defendants, and of its own motion gave the following:

"The papers, documents and oral proof exhibited on the part of the plaintiff are *prima facie* evidence of the title in the plaintiff; but if the land in controversy is embraced in the tract of land claimed by Joseph Brazeau as conceded to him by Charles Dehault Delassus in 1799, and if Joseph Brazeau presented the said claim, embracing the land in question, for investigation to the Board of Commissioners appointed by the act of Congress approved March 2, 1805, and if said claim was confirmed to said Brazeau by the act of Congress passed July 4, 1836, the plaintiff cannot recover in this suit; and the fact that the United States conveyed the same to Joseph Papin in 1826 can make no difference, although the title so conveyed to said Papin may be held to be a better title than that of Brazeau under the act of 1836."

To the giving of which instruction the plaintiff excepted. The court gave judgment for defendants.

*Taussig*, for plaintiff in error.

I. The documentary and oral proof exhibited by plaintiff are *prima facie* evidence of title in plaintiff.

To overthrow the *prima facie* case thus made by appellant, the respondents gave in evidence the Papin patent and the concession, confirmation and survey for Joseph Brazeau's representatives; and the inquiry is, whether he has succeeded, in either instance, in showing a *title* which can prevail against that of the appellant.

II. As between the Papin patent of 1826 and Brazeau's confirmation of 1836, the patent is the better title.—Sarpy

v. Papin, 7 Mo. 503 ; Papin v. Hines, 23 Mo. 275 ; Cabanné
v. Walker, 31 Mo. 285 ; Papin et al. v. Walker, 32 Mo. 24 ;
Wilcox v. McConnell, 10 Pet.

These cases decide : 1. That a patent issued in 1826, al-
though issued without authority—although for land not then
belonging to the United States—although issued for land re-
served from sale, will prevail against the title of a defendant
showing nothing but naked possession (and the court says
that a confirmee, under the act of 1836, trying to inquire
into the validity of a prior patent, stands only on his naked
possession)—7 Mo. 503. 2. That a confirmee under the act
of 1836 cannot defeat an older patent by showing that the
land described in the patent is within the limits of the out-
boundary, and therefore reserved from entry and sale by § 2
of the act of June 13, 1812 ; that this, although a valid de-
fence if adduced by parties in whose favor the reservation
was made, cannot avail a confirmee under the act of 1836,
who must recover on the strength of his own title—23 Mo.
275. 3. They decide incidentally that a confirmation under
the act of 1836 is defeated by showing that the land is within
the outboundary, and designated and set apart for the Public
Schools—Papin v. Ryan, 32 Mo. 24 ; Cabanné v. Walker, 31
Mo. 285.

III. Papin's title under the patent of 1826, standing alone,
is void as against the title shown by the Schools.

The fact that, at the time of the issuing of the patent, the
fee was still in the United States, does not give validity to
the patent, the land being then within the limits of a notori-
ous reservation, and the entry being unauthorized by law—
Stoddard v. Chambers, 2 How. 313 ; Bissell v. Penrose, 8
How. 330-1, 333, 337-9 ; Kissell v. Schools, 18 How. 27 ;
Kissell v. Schools, 16 Mo. 581.

(a) The reservation in the second section of the act of
1812 of all lands not rightfully owned or claimed, for school
purposes, was sufficient to defeat the entry and patent, the
land entered being within the limits of a notorious reserva-
tion—Kissell v. Schools, 18 How. 27.

(*b*) If it be insisted that this is the case of a patent, while the Kissell case presents that of an entry, the answer is, that the decision in 18 How. does not rest on the ground that Duncan's title had not ripened into a patent, but upon the ground that the entry was within the limits of the reservation created by the 2d section of the act of 1812; and that the limits of the reservation, so far as the town of St. Louis was concerned, were notorious ever since the incorporation of the town in 1809. So in the case of Stoddard v. Chambers, 2 How. 313, which was the case of a patent against an older concession with definite boundaries, and therefore the entry was held void because there was a definite location to the concession.

There is no conflict between the cases of Stoddard v. Chambers (2 How. 313), Penrose v. Bissell (8 How. 330), and Kissell v. Schools (18 How. 27), on the one hand, and the case of Menard's Heirs v. Massey (8 How. 293), cited by respondents. In the latter case, the patent prevailed because there was no definite location to Cerré's concession: it was a mere floating claim, and no tract of land. In Kissell v. Schools, 18 How., the Supreme Court of the United States held that the incorporation of St. Louis in 1809 constituted a "notorious reservation," and that an entry within its limits was void, because the reservation had "notorious limits."

(*c*) The reservation thus established by the act of 1812 was never opened or set aside by Congress prior to Papin's entry. (For a list of reserving acts, see Stoddard v. Chambers, 2 How. 313.)

1. Although Congress may by legislation provide for the disposition of reserved lands—i. e. open the reservation and give them a different destiny—so long as it does not legislate, reserved lands cannot be sold—Hammond v. Schools, 9 Mo.; State v. Ham, 19 Mo.

2. The act of April 24, 1820, under which Papin made his entry, did not authorize the sale of reserved lands. It permits only the sale of lands, "the sale of which is or may be

authorized"—3 U. S. Stat. 566. The entry and sale of the Papin lands was not then authorized by law. The act of April 24, 1820, under which the entry was made, did not remove the reservation ; hence the entry was void.

3. Although it may not be competent for Brazeau to set up this defence against the patent, because he is a mere tres-passer with a junior claim, it is certainly competent for us, claiming under a title which has the effect of a patent.

4. If it be said that the survey of the outboundary was not made till 1843, and therefore there was no definite loca-tion to the lands reserved, we say that the definiteness ' of location and notoriety was derived from the existence and incorporation of the town in 1809 and the act making the reservation. In the Kissell case, Duncan's entry was made in 1830, before the survey of the outboundary, and still this court and the Supreme Court of the United States held that the reservation was "notorious"—Kissell v. Schools and Sou-lard v. Ott.

We therefore say that the land in controversy being re-served for the schools by § 2 of the act of 13th June, 1812, was not subject to entry in 1826, and respondent's entry and patent are void as against the assignee.

IV. The concession to Brazeau and Soulard's survey did not constitute a rightful claim within the meaning of § 2 of the act of 1812, and the land described in the concession was not "rightfully claimed" at the date of that act.

(a) The assignment in favor of the Schools is conclusive against the respondents, who do not claim (under Brazeau) that the land was not rightfully claimed, but reserved in 1812—Kissell v. Schools, 16 Mo. 581-2.

(b) By lands "rightfully owned or claimed" Congress meant lands confirmed by § 1 of the act of June 13, 1812, or by prior confirming acts, and no others. Inchoate claims, not recognized by the Government, were not "rightful claims"; they could not be enforced.

The action of the Commissioners in 1833 did not confer a rightful claim—they merely recommended for confirmation ;

the act of July, 1836, conferred a rightful claim to those, whose lands had not been previously disposed of at the pleasure of the United States, the owner of the fee; the acts of May, 1824, and January 27, 1831, operated as such a final disposition of the land for school purposes, and the act of 1836 found nothing to operate on as far as Brazeau's concession was concerned—Trotter v. Schools, 9 Mo. 82–3; Cabanné v. Walker, 31 Mo. 285; Papin v. Ryan, 32 Mo. 24; Schools v. Kissell, 16 Mo. 553; Kissell v. Schools, 18 How. 19; Jones v. Soulard, 24 How. 41.

V. The land in controversy was not confirmed to Brazeau, being excluded from United States survey given in evidence by the defendants.

Respondents are precluded from denying the correctness of the survey.—West v. Cochran, 17 How. 403; Cutter v. Waddingham, 33 Mo. 282; Magwire v. Tyler, 1 Black, 198; Dent v. Sigerson, 29 Mo. 489; Act creating Surv. Gen. Office, 3 U. S. Stat. 325.

VI. The confirmation and U. S. survey to Brazeau do not constitute an independent outstanding title against plaintiff's title—Sarpy v. Papin, 7 Mo. 503.

(a) A confirmee under the act of 1836, in a contest with a prior patentee (1826) stands in the position of a trespasser; he has nothing but naked possession—Papin v. Hines, 23 Mo. 275; Cabanné v. Walker, 31 Mo. 285; Papin v. Ryan, 32 Mo. 24.

This court has held in those cases that proof to the effect that land is within the outboundary, and has been designated and set apart for the Public Schools, defeats a title under the confirmation act of 1836. Granting, for the sake of argument, that the fee to school lands did not pass till 1831, still it passed by the act of 1831 effectually to defeat any title derived under the act of 1836.

The school title is the older grant of the two and therefore must prevail against the confirmation; just as the patent, being an older grant than the school title, would prevail

against it were it not for the fact that its issue was wholly unauthorized and therefore void.

The cases of Menard v. Massey, 8 How. 293, and Stoddard v. Chambers, 2 How. 313, decide that a confirmee under the act of 1836 has no title before the date of that act, which is a mere gratuity.

*Todd* and *Glover & Shepley*, for defendants in error.

It is submitted that the assignment of the lot in controversy is utterly void as against both the adversary titles given in evidence by defendants, and convey no title as against any one claiming under either of those titles.

I. No title is conveyed by it against those claiming under the patent granted by the United States to Joseph Papin, and

1. This is true even if patented land was not within a tract confirmed by act of July 4, 1836; for

(*a*) It is the earliest title in point of time from the United States. The patent to Joseph Papin bears date 15th June, 1826. The patent itself is evidence that it was sectionized, offered for sale, and sold in conformity with law—Kissell v. Schools, 16 Mo. 582.

The mere reservation in the act of 1812 gave the Schools no title; it merely was declaratory of an intention on the part of Congress, which might be carried out subsequently, or might not; and the United States could give title to any one to any part of the reserved lands until a final consummation of the title in the Schools—Hammond v. Schools, 8 Mo. 73-5; State v. Ham, 19 Mo. 592.

The Schools claim title under the act of 1831; therefore, if we for the present assume that the Schools took title at the approval of that act, our title is the earliest from the common grantor. To this it is answered that the act of the Register, Receiver, and President, in issuing the patent, is void as against the United States, as it was by act of Congress reserved from sale for the use of the Schools. To this we answer

(*b*) The act of 1831 conferred a mere donation. It was

without consideration, and was a mere release from the United States "of all their right, title, and interest." Now the United States had previously sold that land to our grantors, and received a valuable consideration for it, and still holds it. The Schools are in no better situation than the United States, but

(c) The reservation under the act of 1812 for schools cannot by possibility be for the same land reserved under the same act to satisfy private claims.

(d) But in fact the Schools took no title to any land whatsoever until the outboundary was run in 1840.

In the case of Kissell v. The Schools, 18 How., at page 25, the court say: "By the act of 1802 the town acquired the promise of an imperfect title to certain vacant lands that might be found to exist within an outboundary survey; but the Government reserved to itself the power to make the survey, and the Board of School Directors was therefore compelled to remain passive until it was completed and the private claims within it ascertained, and until the United States designated the school lands comprehended within it. This survey was completed in 1840 by the Surveyor-General," &c.

Also, patent takes date from its issue—Cabanné v. Walker, 31 Mo. 288. But in this case the land in question is within the limits of a tract confirmed by the act of 1836.

2. But before 1840 there had been a recognition by act of Congress of July 4, 1836, that lands within the limits of tracts confirmed by that act had been rightfully sold by the United States—Menard's Heirs v. Massey, 8 How. 309–10. For the sake of the argument it may be admitted that the patent had been an absolute nullity before.

Now the United States had through its officers sold and received the purchase money of land within the limits of the confirmed claims, and, beyond all question, before Congress granted any land it was competent for it to make good the titles for which it had received the money; and this it proceeded to do, and legalized the title its officers had patented to us. If Congress was competent to confirm the particular

tracts to one set of claimants, it was entirely competent to confirm to another set of claimants, who it regarded as more meritorious, part of the same claim. Its power was no more restricted in the one case than in the other. It will hardly be urged here, and now that the patent was void, because it was for land reserved from sale as embraced in the claim of Brazeau, which was subsequently confirmed. This pretence has been set at rest by the cases—Papin v. Hines, 23 Mo. 274; Cabanné v. Walker, 31 Mo. 286; Menard's Heirs v. Massey, 8 How. (U. S.) 308.

II. The title here set up by the Schools is invalid as against any one claiming under a confirmation by the act of July 4, 1836, of the same land.

By the act of 1812 there was reserved for schools land not rightfully owned or claimed by any "private individuals." That act provides for modes and methods of ascertaining what lands were rightfully owned or claimed by private individuals; by its provisions it reserved the right to determine what lands were so rightfully claimed. Now as the act of 1831 grants *only* the lands reserved by the act of 1812, one way of ascertaining the true construction of the act of 1831 is to consider, that, instead of there being a reservation by the act of 1812, there had been a grant in that act to the Schools with precisely similar words. What, then, would have been the effect? Every one would say that it took only what was left after the United States had decided what was rightfully owned and claimed. Even if the outboundary had been run prior to July 4, 1836, yet the Schools took subject to the right of the United States to designate what were rightful claims—Hammond v. Schools, 8 Mo. 75; Kissell v. Schools, 16 Mo. 579.

III. By the construction, contended for by plaintiff, no confirmation by the act of 1836 is good as against the Schools within the limits of the outboundary of any town or village.

HOLMES, Judge, delivered the opinion of the court.

The case depends upon the question raised by the instruc-
26—VOL. XL.

tion which the court of its own motion gave for the defendants. That instruction declares, in effect, that an inchoate Spanish claim resting upon a concession and survey which had been duly presented for investigation by the Board of Commissioners under the acts of Congress of 1805 and 1807, and was reserved by the act of 1811 and subsequent acts, and was finally confirmed by the acts of Congress of the 4th of July, 1836, was a lot "rightfully claimed" by a private individual, and was excepted as such out of the reservation for schools and military purposes contained in the act of Congress of 13th June, 1812, and was therefore not within the purview of the act of Congress of the 27th of January, 1831, and that the designation and survey of this lot to the schools made by the Surveyor-General on the 31st day of June, 1831, was therefore null and void.

It is a question of some difficulty, upon which there has been as yet no authoritative judicial decision. The case of Cabanné v. Walker, 31 Mo. 274, suggests doubts, but really decides nothing concerning it. In the case of Hammond v. Public Schools, 8 Mo. 75, the position was taken that by the several acts of Congress relating to the subject the United States had reserved the right of ascertaining what lots were rightfully claimed by individuals, and retained the power of determining who rightfully claimed a lot (citing the opinion of Baldwin, J., in Strother v. Lucas, 10 Pet. 445) ; and it was then held that a confirmation of a town lot by the act of 1816 was a final determination on the part of the Government that such lot had been rightfully claimed, and did not come within the reservation for schools. We see no reason why the same principle should not be applied to this confirmation by the act of 1836 of a claim reserved for a similar purpose, and finally determined by the same authority to have been a lot rightfully claimed by a private individual.

Such claims have always been considered by the courts in the light of equities addressed to the justice of Congress, under the obligation imposed on the Government by the treaty of Paris. The filing of such a claim, with the evidences in

support of it, in pursuance of the provisions of the act of Congress of 1805, and the supplementary acts, where it has been confirmed, has been regarded as the first act towards a complete conveyance of the title, and as giving an inceptive right derived from an act of Congress, to which the patent related when issued.

It has been said by this court, that it was the general design of the act of 1812 to dispose of all the property included within the outboundary of the towns—Kissell v. Schools, 16 Mo. 595. At the date of this act there was a class of claims (of which this of Brazeau was one) then standing reserved by the act of 1811 for the final determination of Congress upon this very question, whether or not they were rightfully claimed by private individuals:

So many of the claims filed as were found to come within the provisions of the previous acts had been confirmed by the old board; the remainder were reserved. The act of 1812 disposed of the lots which came within its purview; the rest, which were supposed to be vacant and unclaimed, were, by the second section, reserved for military purposes and the use of schools, with the express exception of such lots as were rightfully owned or claimed by private individuals.

This claim of Brazeau had been duly filed with the evidences of its rightful origin, among which was an official Spanish survey showing its definite location and boundaries, and it unquestionably came within the reservation of the act of 1811 and subsequent acts down to the 26th of May, 1828. It had been rejected by the old board because not fulfilling the requisites of existing laws, and not because it was not an authentic grant and a meritorious claim, according to the laws, usages, and customs of the former government. It stood barred between 1828 and 1832, and might then have been treated as having fallen back into the mass of public lands, or as subject to assignment for schools. By the act of 1832 this bar was removed, and it was again recognized by Congress as a rightful claim still subsisting, and was confirmed as such by the act of 1836. It was thus finally de-

termined by the political power that this land always had
been rightfully claimed. The courts have no jurisdiction to
investigate the grounds of this action. It was the exercise
of the right and power which has been retained by the Gov-
ernment. The mere fact that it had stood barred for a few
years is nothing to the purpose. This subsequent recogni-
tion and final confirmation of the claim passed the title to
the claimant subject to the conditions imposed by the con-
firming act, and it was thereby necessarily implied and con-
clusively determined, as against any one not able to show a
better title, that it always had been a lot rightfully claimed,
and was one of those which were expressly excepted out of
the reservation for schools. It necessarily follows that this
land did not come within the purview of the act of 1824 as
a "vacant" lot to be set apart for schools, nor of the act of
1831 as a lot "reserved for the support of schools." The
act of the Surveyor-General, therefore, designating and set-
ting apart this land to the schools was without the authority
of law, not within the scope of his power, and utterly null
and void.

It has been decided, and is not open to question, that the
designation and survey of a given piece of land to the schools,
when executed according to law, brings the lot within the
operation of the act of 1831 as a grant of title, and is pre-
sumptive evidence that the land so designated and set apart
for schools is a lot within the meaning of the acts of Con-
gress, and makes a regular formal title to the property, and
that the act of the officer will be intended to be within the
scope of his authority until the contrary appears—Eberle v.
Pub. Schools, 11 Mo. 264 ; Kissell v. Pub. Schools, 16 Mo.
550. The essential question in those cases was, whether the
land was a lot within the meaning of the reservation; and
it was held by the Supreme Court of the United States in
Kissell v. Pub. Schools, 1 How. (U. S.) 25, that the court
had no power " to revise the acts of the Surveyor-General
under the statutes"; that " it was not open to them to inquire
whether the lands set apart were or were not lots of the de-

scription referred to in the statutes"; that the parties interested (that is, the Government and the Schools) having agreed that the land in question was "a school lot," there. the matter must rest, "unless some third person could show a better title." The decision proceeds upon the same ground herein taken, that the action of the political power is not subject to review by the courts in favor of any one who cannot show a prior or a better title. This court had made no question but that the lands which the act of eighteen hundred and twenty-four authorized to be set apart for schools, under the limitations of the act of 1812, should be "vacant" and "not rightfully claimed by individuals"—16 Mo. 580. The Government had determined in 1836 that this land had been rightfully claimed by Brazeau, and given him the full title subject to the conditions imposed. The Surveyor-General in 1861, without any special instructions from the Commissioner to that effect, undertakes to review this action of the higher political authority, and determines to the contrary; and the question really is, which was the first binding and conclusive determination. It seems to us that to state this question is to answer it without more. When the matter was once determined, the power of the Government over it was exhausted; the title of the United States had passed to the claimant, or to previous purchasers whose titles were ratified; rights had become vested under; and it was not in the power of the Surveyor-General to divest them, nor to reverse the action of Congress. It has been held that even the head of the Interior Department has no power to reverse or annul the final action of his predecessor in office, in the matter of a survey—U. States v. Stone, 2 Wall, (U. S.) 525.

It is contended that the designation and survey relate back to the date of the granting act of 1831, and vest a title in the Schools as of that date; and so, that the plaintiff has the prior and bettter title, and that the land is thus brought in favor of the plaintiff within the exception of the second section of the act of 1836 of lands "previously located" under a law of the United States, or "surveyed and sold by the Uni-

ted States" to the plaintiff—5 U. S. Stat. p. 127, § 2. This would have been so if the lot had been within the reservation for schools, and if the Surveyor-General had any lawful authority to make an assignment of this land to the schools, and if a better title had not already been conveyed by the United States to another person. A void act can have no relation back. When the grantor has no longer any title to the land, even a patent will be ineffectual and void. Even if it could relate back to the date of the act of 1831, it could not avail the plaintiff; for the confirmation in this case also relates back to the filing of the claim as between the Government and the confirmee or his legal representatives, and the confirmee would have a prior title. In Stoddard v. Chambers, 2 How. (U. S.) 313, where the claim had been filed with definite boundaries and location on which a reservation could operate, and where the land had not been previously sold according to law, the confirmation by this act of 1836 was held to vest the title in the confirmee or his legal representatives, and to enure by estoppel to his grantee by a deed executed in 1804. As between the parties, a patent upon a confirmation by the old board relates back to the filing of the claim as the inception of the title—Landes v. Brant, 10 How. (U. S.) 343. The same doctrine is to be applied here; the principle is the same. This claim was filed and reserved in the same manner and under the same laws as in that case. The successive boards merely took up the claims as originally filed for investigation. The act of the 9th of July, 1832 (4 U. S. Stat. 565), authorized the board "to examine all the unconfirmed claims to land in the State heretofore filed in the office of said Recorder," and directed them to proceed "with or without any new application of the claimants." The confirmation and survey were equivalent to a patent, and may just as well have relation back, as a patent would in like case, as against any title which did not intervene during the period when there was no reservation, or which was not a prior or a better title.

In Menard's Heirs v. Massey, 8 How. (U. S.) 293, it was

decided that the confirmation in that case did not relate back beyond the date of the act, for the reason that, until the survey by the United States, there had been no tract of land with any defined location and boundaries on which the reservation could operate, and therefore that a patent from the United States in 1826 of land not reserved from sale was not overreached by relation. It was also distinctly held that if the claim had been filed with the Recorder in 1806, with a survey showing its boundaries, so that it would have fallen within the reservation as a defined tract of land, it would still have come within the exception of the second section of the act of the 4th of July, 1836, as land surveyed and sold by the United States. It was said that Congress might confirm these claims on such conditions as they saw fit to prescribe. This decision on this point has been followed by this court—Papin v. Hines, 23 Mo. 274 ; Papin v. Ryan, 36 Mo. 406.

It results from this that the confirmation to Brazeau cannot relate back to overreach the patent to Papin in 1826 for the reason that the land had been previously surveyed and sold to him, and was excepted out of the confirmation as against his patent, which was recognized by the act itself and thus ratified from its date ; but between the Government and the confirmee, and as against any one not showing a better title of this kind, it may still have relation. The confirmation is not wholly void by reason of the exception imposed as a condition of the grant. It is invalid only as against such previous sale of this land. There was no previous sale of this land to the Schools for the reason that it had been rightfully claimed by a private individual, and never came within the reservation for schools. The confirmation is conclusive on this matter. The same act gives to the claimant the right to locate other lands in lieu of those which had been thus previously sold out of his claim. The validity and rightfulness of the claim were still fully recognized by the Government and thus far made effectual to the claimant.

Now if the case stood upon the record only as a controversy between the entry and patent and the school title, without reference to the act of 1836, the designation and survey to the schools could not be disputed by the defendants, standing on the entry and patent alone, for the reason that the land at that date as a lot not rightfully claimed by any private individual would have been within the reservation for the schools and military purposes and not authorized by any law to be sold; and the case would have fallen within the decisions in like cases—Kissell v. Schools, 18 How. (U. S.) 27; Jones v. Soulard, 24 How. (U. S.) 41; Jackson v. Wilcox, 13 Pet. 498; State v. Ham, 19 Mo. 602. But the title had passed out of the United States either by the confirmation or by the patent. Possession was evidence of title against all but the sovereign proprietor of the soil; and the defendants were in a position to show a better outstanding title in the representatives of Brazeau, or a better title in themselves. As between Brazeau and the patentee, the confirming act recognizing the claim confirms the land to him, but imposes the condition that the previous sale by entry and patent, though not authorized by any law when made, shall be deemed valid to convey this land to the patentee, and gives Brazeau the right to locate other lands in lieu thereof. The subsequent legislation, according to the decision in Menard's Heirs v. Massey, 8 How. (U. S.) 293, and in Cabanné v. Walker, 31 Mo. 274, and Papin v. Hines, 23 Mo. 274, makes the patent valid from its date notwithstanding the previous reservation. The defendants, therefore, are in a position to call in question the validity of the assignment of this land to the schools as effectually as Brazeau could have done if no condition had been imposed upon his confirmation. They are able to show a better title than the plaintiff, and having done so the plaintiff is not entitled to recover.

Judgment affirmed. The other judges concur.