# CHARLESTON.

JOSIAH HENDERSON, ADM'R *v.* W. H. SMITH, JR.

26  829
42  484

Submitted September 11, 1885.—Decided November 28, 1885.

(JOHNSON, JUDGE, Absent.)

1. The official act of taking and certifying the acknowledgment and privy examination of a married woman to a deed, whether done by a court, justice or notary, is in the nature of a judicial act ; and therefore the officer is not liable in damages for such act, however imperfectly he may perform it, unless he acted from malicious, impure or corrupt motives.    (p. 8( 7.)

2. Where a notary takes and certifies the acknowledgment and privy examination of a married woman, but omits from the certificate the words ; "declared she had willingly executed the same and does not wish to retract it," the certificate is fatally defective ; yet, as it is not alleged in the declaration, or proved, that the notary acted maliciously or corruptly, he is not liable in damages to the person injured for the loss occasioned by such invalid certificate.    (p, 838.)

*R. S. Blair* for appellant.

*W. L. Cole* for appellee.

SNYDER, JUDGE :

Action of trespass on the case brought in the circuit court of Wood county by Josiah Henderson against William H. Smith to recover $1,000.00 damages sustained by the plaintiff by reason of the gross negligence and unskilfulness of the defendant in taking the acknowledgment of a certain trust-deed. The declaration contained three counts to all of which the defendant demurred. The court overruled the demurrer, the defendant pleaded not guilty and also special pleas upon which as well as the plea of not guilty issues were joined. The case was tried by a jury and a verdict found for the defendant, which the plaintiff moved the court to set aside, but the court overruled the motion and, on May 30, 1881, entered judgment for the defendant. During the trial exceptions were taken to certain instructions and rulings of

the court, and to review alleged errors in said rulings, the plaintiff obtained this writ of error.

All the evidence is certified, and as there is no conflict in the material parts of it, it may be treated as a certificate of the facts. The substance of the case thus certified is as follows:

The plaintiff, Henderson, having on deposit to his credit in the First National Bank of Parkersburg of which W. N. Chancellor was cashier and the defendant teller, agreed to loan said money to Anton Doerr upon the note of Doerr payable twelve months after date with interest, to be secured by a trust-deed executed by Doerr and wife to K. B. Stephenson, trustee, upon a house and lot in Parkersburg, of which the wife was the owner of the fee. The plaintiff employed said Stephenson who was a practicing attorney at law in Parkersburg to prepare and have said note and trust-deed executed, and directed said Chancellor as cashier of the bank to let Doerr have the money when Stephenson prepared the papers and brought them to the bank signed and executed. Accordingly, on April 5, 1870, Stephenson prepared the note and trust-deed, the note was signed by Doerr and the deed by Doerr and his wife, and then Stephenson took the deed to the defendant, who was then a notary public, and requested him to take and certify the acknowledgment of Doerr and wife which he did in the words following:

"WOOD COUNTY, WEST VIRGINIA, TO-WIT:

I, W. H. Smith, Jr., a notary public within and for the county of Wood and State aforesaid, do hereby certify that Anton Doerr, whose name is signed to the foregoing deed, bearing date the 5th day of April, 1870, personally appeared before me in my county aforesaid and acknowledged the same to be his act and deed. And I do further certify that Delia Doerr, wife of said Anton Doerr, whose name is also signed to the foregoing deed, bearing date the 5th day of April, 1870, personally appeared before me in my county aforesaid, and being examined by me privily and apart from her said husband, and having the deed aforesaid fully explained to her, she, the said Delia Doerr, acknowledged the same to be her act and deed. Given under my hand this 6th day of April, 1870.

                    W. H. SMITH, Notary Public."

The deed was recorded on the same day it was acknowledged, and then taken to Chancellor, and he, as cashier, paid over the money to Doerr, as he was directed by the plaintiff. Chancellor was not certain whether the defendant or Stephenson brought the deed to him when the money was paid over, but from all the circumstances I think it may be safely assumed that it was done by Stephenson, as the defendant never had the note, and it, as well as the deed, must have been delivered to Chancellor before he paid over the money. The plaintiff was not in Parkersburg at the time the deed was executed and the money paid over. When the note became due Doerr was insolvent, the trust-deed was declared by a decree of the circuit court of Wood county, void as to Doerr's wife on account of the defective acknowledgment and certificate aforesaid, and by reason thereof the plaintiff lost the greater part of the said $1,000.00.

The question presented by this case is the extent of the liability of a notary public for taking and certifying a defective acknowledgment and privy examination of a married woman to a deed. The question is one of great importance and is of first impression in this State. In fact there are but very few cases, so far as I can find anywhere, on this particular question. The law seems to be well settled, that a notary who fails to make a protest of negotiable paper when it is required, or who neglects to give proper notice to the parties to be charged in case of dishonor, will be unquestionably liable for the loss occasioned thereby. In such matters he is regarded as standing in precisely the same position as any other agent who may be employed about a particular business, and will be held responsible for his negligence and mistakes when loss is occasioned thereby to the party employing him. *Marston* v. *Bank*, 10 Ala. 284; *Allan* v. *Merchants' Bank*, 22 Wend. 215; *Warren Bank* v. *Parker*, 8 Gray 221; *Bowling* v. *Arthur*, 34 Miss. 41; *Dorchester Bank, &c.* v. *New England Bank*, 1 Cush. 177.

It was held, however, in *Commercial Bank* v. *Varnum*, 49 N. Y. 269, that where a notary is directed to protest a bill on the wrong day by a bank which employs him for that purpose, he is not presumed to be a lawyer who is to revise the decision of his employer as to the character of the bill, and he cannot be held liable for following his instructions.

Proffatt, in his work on Notaries, sec. 64, says: "Notaries are requied to give bond in a majority of our States, for the true and faithful discharge of their duties. The question will arise as to the nature and extent of this guarantee, and as to what particular acts or ommissions it provides against. Does it insure one against the unskillfulness or incapacity of the notary in the discharge of his official acts, or does it merely assure against his negligence? There can 'be no questeon whatever that it does give a guarantee against his negligence, for it could hardly be maintained that he discharges his duties faithfully when he is guilty of negligence in his official acts; but it is quite a different question whether he can be held liable on his official bond for incapacity or mistake, when he acts in good faith to the best of his ability. There is no doubt, if he assumes to act in a given case as one posessing the requisite ability or skill, he can be held as any other agent, tor any loss by reason ot his incapacity, but then it can hardly be said he is guilty of unfaithfulness. For instance, suppose, in taking an acknowledgment, he has put before him, as is frequently the case, a certificate drawn by an attorney of one of the parties, and that he duly attests it with his signature and official seal, and that afterward it turns out the certificate is invalid for some ommission or informality, and loss is sustained thereby, is he liable on his official bond tor the damages thus occasioned? We think this would depend on the nature of the ommission, as whether he omitted to certify to a fact to which he must certify *as having personal cognizance.* A case in California illustrates the position laid down above, and perhaps holds the notary to a stricter liability than would be the case elsewhere; but it was based on the statute which provided ' for any misconduct or neglect of duty in any of the cases in which any notary public appointed under the authority of this State, is authorized to act * * * he shall be liable on his official bond to the parties injured thereby tor all damages sustained.' In this case the notary took the acknowledgment of a mortgage, and omitted to state in his certificate, as required by the statute, that the party acknowledging it was kown to him, or was identified by the testimony ot a witness examined for that purpose. * * * The mortgage thus

recorded was held insufficient to give notice to a subsequent purchaser, and the result was that the party lost the security of his debt, as the mortgager was insolvent. The notary was held liable on his official bond for the amount of the debt and interest."

In this State notaries are appointed by the governor to hold thier offices during good behavior. They are required to take the oath of office and give bond in the penalty of not less than $250.00, nor more than $1,000.00, "for the faithful discharge of their duties, and for accounting and paying over as required by law all money which may come to their hands by virtue of the said office." They are also authorized to take the "acknowledgments of deeds and other writings, and the privy examination of married women respecting the same," and they are authorized to charge the fees for their services, chaps. 10 and 51 Code; ch. 4 Acts 1881, and ch. 20 Acts 1882.

By the common law, a married woman could not, by joining her husband in a deed, bar herself or those claiming under her of her own estate. In process of time, however, fines and recoveries were introduced for the purpose and by them the rights of the wife might be successfully transferred. But to prevent imposition upon her, it was subsequently provided by statute that, where a *feme covert* was one of the parties to a fine she should be privily examined, and if she refused her assent, the fine could not be levied. Thus while the privy examination was positively enjoined by the statute, yet if the wife was allowed to acknowledge the fine without such examination, she was, nevertheless bound by it, for it was held to be a judicial proceeding the record of which could not be contradicted except for fraud in the conusee whom equity would in such case consider a trustee for her. Such was the law in England when this country was first settled and for a long time thereafter.

Early in the history of Virginia, a deed accompanied by a privy examination of the wife, was made a substitute for the fine and was given by statute the same effect. At first this privy examination could only be taken before a court of record or two justices of the peace. In both cases the same requisitions were necessary. In both it was required that

the deed should be shown to the wife and explained to her, that she should acknowledge it as her act and deed and declare that she had willingly and freely signed, sealed and delivered it. Thus the law remained in Virginia until the revision which resulted in the Code of 1849. By that Code it was for the first time provided in that State,. that a notary-public might take the privy examination of a married woman. The same statute provided the form in which such examination should be made and certified. Code Va., secs. 3 and 4, ch. 121. This form is substantially the same as the one previously required in that State, and is identical with the one adopted and in force in this State. Secs. 3 and 4, ch. 73, Code.

In *Harkin* v. *Forsyth*, 11 Leigh 294, 302, decided in 1840, the court in its opinion says: "Where this examination has been made in court, it must be conceded that it is altogether conclusive, and that no allegation can be admitted to contradict the entry upon record, however much that it may be at variance with the real facts. Though the judge or justice who may have examined her (the married woman) may have disregarded every requisite of the statute, yet when the term is once ended, the truth of the record never can be quesidoned, but the examination must be taken to have been in truth what by the record it appears to have been." The opinion then proceeds to show that an aknowledgment and privy examination taken *in pais* by two justices is of the same nature and must be given the same effect as if they had been taken before a court and entered upon its records. Such being the case, it seems to me, to follow as an unavoidable consequence, that, by authorizing a notary public to take such acknowledgments and privy examinations, the legislature must have intended to confer upon them duties of the same nature then and theretofore exercised by courts and justices, and to give their acts the like dignity and conclusive effect.

The reason as well as the nature and history of the subject, show that the official act of taking the privy examination of a married woman, whether done by a court, justice, or notary, is a judicial act, or as it is sometimes designated a *quasi*-judicial act. I have examined quite a number of authori-

ties on this subject and all of them without exception hold or treat such act as judicial in its nature. The following are some of the cases referred to *Harkins* v. *Forsyth*, *supra*; *Jamison* v. *Jamison*, 3 Whart. 457; *Wasson* v. *O' Conner* 54 Miss. 352; *Neal* v. *Taylor*, 9 Bush. 380; *Hunter* v. *Glasgow*, 74 Pa. St. 79; *Wilson* v. *Truer*, 20 Iowa 233; *Stevens* v. *Hampton*, 40 Mo. 404.

In 11 Leigh 307, the court says in regard to the statute : "It has authorized them (two justices) to take that privy examination which, in the levy of a fine, constituted part of a judicial proceeding, and never could be contradicted. It has empowered them to take and certify the examination and acknowledgment, which it also makes one of the functions of its courts of justice, and thus it appears to invest them with an authority judicial in its nature."

In *Jamison* v. *Jamison*, *supra*, the court says : "The judge or justice of the peace in taking an acknowledgment *acts judicially, not ministerially.* The law imposes on him the duty of ascertaining by his own view and examination the truth of the matters to which he is to certify and points out his precise duty. 3 Whart. 469; *Hall* v. *Patterson*, 1 P. F. Smith 289.

This Court in *Tavener* v. *Barrett*, 21 W. Va. 658, decided, that where a trust deed is acknowledged by a husband and wife before a notary who is one of the trustees in the deed, the acknowledgment and privy examination as to the wife is an absolute nullity. Judge Green in delivering the opinion of the Court, approving and adopting the language used by the Court in *Stevens* v. *Hampton*, *supra*, says : "The objection to the trustee taking such acknowledgment is analogous to the one forbidding a judge to pass upon his own case. Though this act may not be strictly judicial, it is of a judicial nature and requires disinterested fidelity." 21 W. Va. 688.

In *Kerr* v. *Russell*, 69 Ill. 666, the court, in a well considered and able opinion, held, as the necessary conclusion both of reason and the decided cases, that "The act of an officer in taking the privy examination of a wife and her acknowledgment of a deed, is in the nature of a judicial act, and no other evidence than the certificate can be received to prove the fact."—See *Enner* v. *Thompson*, 46 Ill. 221; Proffatt on Notaries, sec. 155.

The liability of a public officer to an individual for his negligent acts or omission in the discharge of an official duty depends altogether upon the nature of the duty as to which the neglect is alleged. Where his duty is absolute, certain, and imparative, involving merely the execution of a set task—that is, if the duty is simply *ministerial*—he is liable in damages to any one specially injured either 'by his omiting to perform the task or duty, or by his performing it negligently or unskillfully. On the other hand, when his powers are discretionary, to be exerted or withheld according to his own judgment as to what is necessary and proper, he is not liable to any private person for a neglect to exercise those powers, nor for the consequences of a lawful exercise of them where no corruption or malice can be imputed, and he keeps within the scope of his authority. It has been laid down as a general principle that if a public officer in such cases simply errs in the discharge of his duty, he is not liable.— *Donahoe* v. *Richards*, 38 Me. 376; *Reed* v. *Conway*, 20 Mo. 22; *Allen* v. *Blunt*, 3 Story 742; *Kendall* v. *Storks*, 3 How. 87.

An officer possessing such discretionary powers is spoken of as a judicial or *quasi*-judicial officer from the likeness of his discretionary functions to those of a judge who decides controversies between individuals.

Judges of courts of record are never accountable in damages for their judicial acts within their jurisdiction, even if they act corruptly or oppressively, being in such case impeachable only. *Yates* v. *Lansing*, 9 Johns. 395; *Taylor* v. *Moffatt*, 2 Blackf. 305.

The judicial privilege is enjoyed by the judges of inferior as well as those of the superier courts. But as these exercise special and limited powers no presumption of jurisdiction is made in their favor; and even where they act within their jurisdiction, the act complained of must have been done honestly and in good faith to exempt them from liability; that is, they are not liable, unless they acted from malicious, impure or corrupt motives. *Gregory* v. *Brown*, 4 Bibb 28; *Howe* v. *Mason*, 14 Iowa 510; *Briggs* v. *Wardwell*, 10 Mass. 356.

Persons exercising judicial functions, by whatever name they may be called, enjoy the protection of this judicial privilege. Indeed, any officer, sworn to act faithfully, according

to the best of his ability, and according as things shall appear to him, is a judicial officer within the rule. Thus jurors, in determining their verdict act judicially. So do courts martial, election-officers, commissioners in bankruptcy, &c. See Shear. & Red. on Neg., secs. 156 to 169, and cases cited.

The same officer may be charged with both judicial and ministerial duties. When he is in the exercise of the latter, that is, purely ministerial functions, he is of course not protected by the judicial privilege. He is liable for negligence, like every other ministerial officer. There is a distinction between those officers whose duties are of a general public nature and who act for the profit of the public at large, and that other class of officers who are appointed to act, not for the public in general, but for such individuals as may have occasion to employ them for specific fees paid. The same officer may have duties assigned to him, by law, of both classes of these duties. In our State justices, constables, notaries and sheriffs may be regarded as such, because these officers are made by statute conservators of the peace for which they receive no pay from individuals, while at the same time they each and all receive fees for services performed by them for individuals. But in the matter now before us this distinction is not very material. The important distinction is, between judicial or *quasi*-judicial functions and purely ministerial acts or duties. When the act done is of the latter character, whether done by a *quasi*-judicial or a ministerial officer, there never has been any question that the officer is liable in damages for any act of negligence or abuse of his office, to any individual specially injured thereby. *Robinson* v. *Chamberlain*, 34 N. Y. 389; *Adsit* v. *Brady*, 4 Hill 630; *Hoover* v. *Barkhoof*, 44 N. Y. 113.

I do not think there can be any question, according to both reason and authority, that the official act of taking and certifying the acknowledgment and privy examination of a married woman to a deed, whether done by a court, justice or notary, is in its nature a judicial act; and that the officer is not liable in damages for such act, however imperfectly he may perform it, unless he acted from malicious, impure or corrupt motives. It is a duty which requires judicial discretion, and therefore to exempt the officer from liability it is

only necessary that he should act honestly and in good faith' according to the best of his skill and judgment.

This conclusion is adverse to the case of *Foyarty* v. *Finley*, 10 Cal. 239, *supra*, unless that case can be considered as simply an interpretation and enforcement of the California statute. We have no such statute; and if that case can be regarded as founded on the general law, it stands alone, unsustained by the decision of any other court so far as I have been able to discover, and it is, therefore, disapproved as being unsupported by either reason or authority.

In the case at bar, it is not alleged in the declaration or attempt to be proved, that the defendant acted either corruptly or maliciously. All the plaintiff alleges or offers to prove is, that the defendant acted negligently and unskillfully. The defect in the certificate is the omission of the essential words, that the wife "declared she had willingly executed the same and does not wish to retract it." Sec. 4 ch. 73 Code p. 470. This was unquestionably a fatal defect. *Watson* v. *Michael*, 21 W. Va. 568; *Grove* v. *Zumbro*, 14 Grat. 501.

This defect is apparent upon the face of the certificate; and it might therefore be regarded, as insisted by the defendant in error, that the loss sustained by the plaintiff was not the direct result of the negligence of the defendant, but that the proximate cause of the loss was the negligence and want of care on the part of the plaintiff or his attorney in having the deed so defectively acknowledged placed upon record and paying or loaning the money upon it. *Washington* v. *B. & O. R. R. Co.*, 17 W. Va. 190; *Lowery* v. *Telegraph Co.*, 60 N. Y. 198; *Pennsylvania R. R. Co.* v. *Kerr*, 353; *McClung* v. *The Sioux R. R. Co.*, 3 Neb. 44.

Having thus reached the conclusion that the plaintiff was not entitled to relief upon the case made by his declaration, nor upon the facts proved, it is unnecessary to consider the many objections and exceptions taken to the rulings of the court during the trial. The demurrer to the declaration should have been sustained. For the reasons aforesaid the judgment of the circuit court in favor of the defendant is affirmed.

AFFIRMED.