# CHARLESTON.

## ARNOLD v. HAWKINS.

Submitted October 31, 1916.  Decided November 14, 1916.

1. SHERIFFS AND CONSTABLES—*Liabilities—Acts of Deputy.*

   Though his term of office has expired and he has made final settlement with his deputy, a sheriff is liable for the default of such deputy, deputed by him to collect and disburse the public taxes on lawful orders drawn on him, in withdrawing from the bank where deposited and misappropriating the same, the public money necessary to meet and pay his checks given the holder to take up and pay such orders, and so long as the bank where the money is deposited and on which the checks are drawn remains solvent and no loss is sustained thereby. (p. 207).

2. Same.

In law and by section 11, chapter 7, serial section 226, Code 1913, the default or misfeasance of a deputy sheriff is the default of the sheriff and a breach of the conditions of·his official bond. (p. 209).

3. Limitation of Actions—*Action Against Sheriff.*

In an action against a sheriff by the original holder of school orders, so taken up by the checks of such a defaulting deputy, who has withdrawn from the bank and misappropriated the public money necessary to meet and pay his checks, the statute of limitations of five years has no application. (p. 211).

4. Exceptions, Bill of—*Questions Considered.*

When after the trial all the evidence has been transcribed and certified by the official stenographer, and sufficiently identified and made part of the record by one bill of exception, it may be considered on questions presented in other bills of exceptions. Applying the rule of *Marshall* v. *Stalnaker,* 70 W. Va. 394. (p. 211).

Error to Circuit Court, Fayette County.

Action by Lucy M. Arnold against E. B. Hawkins. Judgment for defendant, and plaintiff brings error.

*Reversed, and new trial awarded.* ·

*F. C. Pifer* and *W. R. Bennett,* for plaintiff in error.

· *Osenton & Horan,* for defendant in error.

Miller, Judge:

Plaintiff, a school teacher, sued defendant, late Sheriff of Fayette County, in an action of assumpsit on the common counts. In the bill of particulars filed with the declaration defendant is debited with two items, as follows: "To amount due on account of Fayetteville District Teachers Fund drafts Nos. 855, 853, 854, 781, 865 and Building Fund drafts Nos. 353 and 355. $222.00. Interest from Feby. 15, 1913. To amount due on account of Fayetteville Teachers Fund drafts Nos. 434, 435, 436, 437, 438, 439 and Building Fund No. 124. $277.50. Interest from Feby. 15, 1913."

The defendant, besides demurring to the declaration, which contains only the common counts, and is in the usual form, and of course good on demurrer, also, over plaintiff's objection,

filed two special pleas in writing, the first a plea of payment, in which it is averred that before the commencement of this suit plaintiff was paid by W. A. Edler, the aggregate sum of $499.50, as follows: August 1, 1908, $222.00, and March 3, 1909, $277.50; the second, a plea of the statute of limitations of five years, and on which pleas issues were joined.

Upon the trial, on the evidence and the instructions given by the court, the jury returned a verdict for the defendant, and the judgment thereon now complained of was that the plaintiff take nothing by her action and that defendant recover from plaintiff his costs.

By rulings of the court, in filing defendant's special pleas; on the admission and rejection of certain evidence of the witnesses; the motion of plaintiff to strike out the defendant's evidence; the giving and refusing of instructions to the jury, and plaintiff's motion to set aside the verdict of the jury and grant her a new trial on the ground that the verdict was contrary to the law and the evidence, overruled, the following questions were presented: First, is a sheriff liable, under the facts and circumstances shown in evidence, after his term of office has expired and after he has fully settled with his deputy for the amount of school orders drawn upon by him by a board of education and surrendered to such deputy, for the default of such deputy in withdrawing from the bank, continuing solvent, where he kept on deposit as such deputy the public funds collected for taxes, the amount necessary .to pay his outstanding checks given to the holder of such orders when so surrendered, such checks not having .been presented to the bank for payment for more than five years from their date? Second, if so liable for such default of his deputy, does the statute of limitations of five years apply to an action upon such orders against the sheriff?

Our statute, section 11, chapter 7, serial section 226, Code 1913, relating to the appointment and qualification of deputy officers generally, including deputy sheriffs, provides: "Every deputy so appointed shall take the same oath his principal is required to take, and may, during his continuance in office, discharge and perform any of the official duties of his principal, and any default or misfeasance in office of such

deputy, shall be deemed a breach of the conditions of the official bond of his principal." And it has been distinctly decided that the bond taken by a sheriff from his deputy is the private contract between the parties to it, and not a public one, and that a sheriff may maintain an action thereon to recover taxes collected by his deputy, without having first paid such taxes into the public treasury. *Poling* v. *Maddox*, 41 W. Va. 779.

And we cite very high authority for the proposition that when liability is incurred by a deputy sheriff in his official capacity, on account of his principal, such liability continues even after his term of office expires, and until the liability is discharged. Murfree on Sheriffs, (1884), sections 20, 21, and sections 58 to 62. We think that there can be no doubt that if the defendant in this case had been acting in place of his deputy in taking up and paying the plaintiff for the school orders sued on, by his checks on a bank, he would be bound on penalty of being found in default to always have on deposit in the bank sufficient money to meet and pay those checks, whether presented for payment on the same day, the next day, or even months or years afterward. At no time after giving his checks would he be justified in withdrawing from the bank the money necessary to meet and pay them. To do so with respect to the public funds collected and held to meet public demands would render him a defaulter and he and his sureties, in case of loss, liable on his official bond.

The evidence shows that defendant was elected sheriff for the term beginning January 1, 1905, and ending December 31, 1908; that W. A. Edler, mentioned in defendant's plea of payment, was his deputy from about July, 1905, to the time of Edler's final settlement in 1909, and covering the period of his transaction with plaintiff; that defendant had required of Edler a bond which he had executed with sureties; that defendant turned over to Edler for each year the tax tickets for the districts of Fayetteville, Kanawha and Falls districts, and charged him with same, and with authority to collect and disburse the money upon proper orders, and that all the money so collected by Edler was disbursed or should have been disbursed upon such orders; that Edler

kept an account in a bank where he deposited or should have deposited such public funds, and that in his settlement with defendant's bookkeeper Edler turned in all orders paid or that should have been paid and was given credit therefor; that while defendant knew Edler had such an account in the bank he never examined it, or called for vouchers, or checks, other than the county and other orders so turned in, but trusted Edler and relied solely on the production by him of such orders, among which were the orders sued upon in this case; that the latter orders were taken up by the checks of Edler given to plaintiff about the dates of the alleged payments mentioned in defendant's plea of payment, and which checks plaintiff retained for more than five years from their date before presenting them to the bank for payment.

Under our statute, and generally, say the authorities, a deputy sheriff is the deputy of the sheriff—one appointed to act for the sheriff and not in his own name, person or right. 35 Cyc. 1489. What Edler did, or was authorized to do, therefore, was to act for and on behalf of defendant, indeed his acts and all of them were the acts of his principal; by this the defendant became bound, in the same way and to the same extent as if Edler's acts had been his acts; Edler's defaults became in law his defaults; when Edler, as deputy, gave his checks to plaintiff and took up her orders, it was his duty to leave on deposit the money to meet and pay those checks; therefore, he had no lawful right to withdraw the same, and when he did so to the prejudice of plaintiff's rights, his default was defendant's default, because he was acting for and on behalf of defendant, and when Edler, as it is conceded, after giving plaintiff his checks, withdrew the money from the bank, his act was the act of his principal, and the principal became and continued liable therefor, so long as the bank remained solvent.

Respecting the collection and disbursement of public taxes the very highest authority says: "The collector must also at his peril keep safely and account for whatever comes to his hands. It is no defense, when he is sued for a failure to account, that the moneys have been stolen from him, or otherwise lost, without fault or negligence on his part. This seems

a very harsh rule, but it is, without question, a very necessary one." .2 Cooley on Taxation, (3rd ed.) 1333, and decisions cited in notes. In *United States* v. *Dashiel,* 4 Wall. 182, one of the cases cited, the first point of the syllabus is: ''The loss of public money by a receiver and disburser of it, through felonious taking away, though without fault on his part, does not discharge him or his sureties from obligation on his official bond.

The main ground of defense on the plea of payment was that as Edler had given plaintiff his checks for the orders sued on, and as the evidence showed they would have been paid if they had been promptly presented at any time before his final settlement with defendant, defendant has been prejudiced by plaintiff's neglect, and the acceptance of the checks and surrender of the school orders, and should be discharged from liability for the default of Edler. Is this the law of this case? We think not. Undoubtedly if the bank had failed and the money left on deposit against which the checks were drawn had thereby been lost, the failure of plaintiff to present the checks for payment within a reasonable time or before failure or insolvency of the drawee bank would have discharged the drawer or his principal, the defendant. But the bank has remained solvent and the loss to defendant, if any, has been due to the wrongful act of his agent and deputy in drawing out and misappropriating the money to his own use. For such default the defendant is liable.

The proposition relied on by defendant that checks given upon a bank must be promptly presented for payment, if the holder would protect himself against loss, due to the failure or insolvency of the bank of deposit, is not controverted. Many cases so hold. *Compton* v. *Gilman,* 19 W. Va. 317; *Ford & Burdett* v. *McClung,* 5 W. Va. 156; *McClain* v. *Lowther,* 35 W. Va. 297, Syl. 2; *Cox* v. *Boone,* 8 W. Va. 510; *Bell* v. *Alexander,* 21 Grat. 1; *Purcell* v. *Allemong & Son,* 22 Grat. 739. But these authorities hold that to defeat recovery the drawer must show that he has been injured or prejudiced thereby; and the only way defendant attempts to show loss or prejudice in this case is that his agent for whose act he is liable withdrew and misappropriated the public

funds before his checks were presented for payment. This will not do. The wrongful act of his deputy will not be sufficient to defeat plaintiff's recovery.

The next question is, does the statute of limitations of five years bar plaintiff's action? The action is upon unpaid school orders, not against the board of education, the drawer of the orders, but against the defendant, the treasurer of the public funds upon which the orders were so drawn. The board of education is not defending or interposing the statute; the treasurer of the public funds is doing so. His checks, or those of his deputy given to take up the orders have not been paid, and he is sued for the money upon which the orders were drawn. Can he interpose the statute of limitations? Our statute, section 145, chapter 45, serial section 2201, Code 1913, gives right of action against the sheriff and his sureties on such orders issued by a board of education. See, also, *Canby* v. *Board of Education*, 19 W. Va. 93; *Ratliff* v. *County Court*, 33 W. Va. 94. In Virginia, in *Jennings* v. *Taylor*, 102 Va. 191, 45 S. E. 913, it was distinctly decided that the statute of ten years might be interposed by the sureties on a bond of a sheriff, but that as against the sheriff himself, having the money in his hands upon which the county orders sued for were drawn, no statute of limitations was applicable.

Finally, it is objected by counsel for defendant that we cannot dispose of this case on the merits, and on plaintiff's motion for a new trial, because the evidence is not made a part of the record by any bill of exceptions. It is true that the third bill of exceptions covering the motion of the plaintiff to set aside the verdict and grant her a new trial on the ground that the same is contrary to the law and the evidence, does not in terms make the evidence a part thereof by reference thereto, or in any way specifically identify the certificate of evidence, but bills of exceptions numbers one and two, both taken and certified after all the evidence had been adduced, do specifically refer to the "Certificate of Evidence", as certified by the official stenographer, and make the same a part thereof. We find such a certificate of the evidence in the record, duly certified by the court stenographer, as being all the evidence adduced on the trial. This certificate of evi-

dence is not signed by the judge, but is identified by the endorsements of the clerk and by the official stenographer, and besides contains internal marks sufficiently identifying it as being the evidence and all the evidence offered on the trial. It is contended that the references in bills of exception numbers one and two were for the specific purpose of preserving plaintiff's exceptions to the rulings of the court on the rejection and admission of the evidence of certain witnesses and were not intended to cover the whole evidence. We think this contention is without merit. These bills of exceptions were taken and certified after the trial and after all the evidence on both sides had been introduced, and all the evidence being once made a part of the record by one bill of exceptions it is competent for the court to look to it in considering questions raised on other bills of exception. *Hall* v. *Hall,* 12 W. Va. 1, 21; *Klinkler* v. *Wheeling Steel & Iron Co.,* 43 W. Va. 219. And in addition to this rule, the liberal rule recognized and applied to such bills of exceptions in *Marshall* v. *Stalnaker,* 70 W. Va. 394, *Jackson* v. *Wheeling Terminal Ry. Co.,* 65 W. Va. 415, and *DeBoard* v. *Camden Interstate Ry. Co.,* 62 W. Va. 41, and recognized but not applied in *McCray* v. *Craig & Son,* 70 W. Va. 735, for reasons differentiating it from the Marshall-Stalnaker Case, we think is applicable to this case, and justifying the holding that the reference to the certificate of evidence, in bills of exceptions numbers one and two, sufficiently makes all the evidence a part of the record, and that it may properly be considered in plaintiff's motion for a new trial.

For the foregoing reasons we are of opinion to reverse the judgment and award the plaintiff a new trial.

*Reversed, and new trial awarded.*