# CHARLESTON.

ELINORA CLARK v. J. A. KELLY

(No. 5561)

Submitted May 4, 1926.     Decided May 18, 1926.

1. APPEAL AND ERROR—*Where First Bill of Exceptions Was Certificate of Evidence, and Second and Third Were Exceptions to Rulings of Court Not Requiring Special Bills of Exceptions, an Order of Court Purporting to File Them Calling Only for "Her Bill of Exceptions," and Only Ground for Motion to Set Aside Verdict Was That it Was Contrary to Law and Evidence, Appellate Court May Construe Order so as to Refer to Bill of Exceptions Covering Evidence Adduced on Trial (Code, c. 131, § 9).*

   Where three bills of exceptions to rulings of the trial court were signed by the trial judge, No. 1 being a certificate of the evidence, and Nos. 2 and 3 exceptions to rulings of the court not requiring special bills of exceptions, but preserved by orders of record, but the order of the court purporting to file the same calls only for "her bill of exceptions," and the record shows that the only ground of the motion to set aside the verdict of the jury was that the same was contrary to the law and the evidence, the appellate court may by construction of the order refer the one called for in the order to the bill of exceptions which covers the evidence adduced on the trial, it being the one which with reasonable certainty was manifestly intended by the order of identification.   (p. 653.)

   (Appeal and Error, 4 C. J. § 2748.)

2. SAME—*Where Only Ground Assigned in Motion to Set Aside Verdict Was That it Was Contrary to Law and Evidence, Appellate Court Will Not on Writ of Error Consider Any Grounds for New Trial Awarded Not Assigned in Court Below.*

   Where the only ground assigned in a motion to set aside the verdict of a jury was that it was contrary to the law and the evidence, the appellate court will not on writ of error consider any grounds for the new trial awarded not assigned in the court below.   (p. 655.)

   (Appeal and Error. 3 C. J. § 768.)

3. FALSE IMPRISONMENT—*Imprisonment Without Mittimus or Lawful Process is Illegal, Rendering Jailer Liable in Damages.*

The imprisonment of another by a jailer without a mittimus or other lawful process is illegal, and renders such officer liable in damages to the one injured thereby. (p. 656.)

(False Imprisonment, 25 C. J. § 29.)

4. OFFICERS—*Where Duties Imposed on Public Officer Are Positive and Ministerial Only and Involve no Discretion, He is Liable to Any One Injured by Nonperformance or Negligent Performance, Without Regard to His Motive or Any Question Involving Corruption in Office; Whether Public Officer Has Properly Discharged Duties of Ministerial Nature is Generally Question of Fact for Jury.*

Where the duties imposed upon a public officer are positive and ministerial only and involve no discretion on his part, he is liable to anyone injured by his nonperformance or his negligent performance thereof, and this without regard to his motive or any question involving corruption in office; and whether he has properly discharged his duties in the premises is generally a question of fact for the jury on the evidence adduced before them. (p. 657.)

(Officers, 29 Cyc. p. 1442.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Kanawha County.

Action by Elinora Clark against J. A. Kelly for false imprisonment. Judgment setting aside a verdict for plaintiff and awarding defendant a new trial, and plaintiff brings error.

*Judgment reversed; verdict reinstated.*

*Beverly Broun* and *Lon H. Kelly*, for plaintiff in error.

*H. D. Rummel*, for defendant in error.

MILLER, JUDGE:

Plaintiff, a citizen and resident of Virginia, sued defendant, jailer of the City of Charleston, West Virginia, for alleged personal wrongs and injuries inflicted upon her by him. On the trial the jury returned a verdict for plaintiff for four hundred dollars, which, on defendant's motion, the circuit

court set aside and awarded him a new trial, to which judgment we awarded the present writ of error.

The issues tried were presented by defendant's plea of not guilty. The declaration is in two counts. The first alleges plaintiff's arrest, while she was visiting at the home of her son in the City of Charleston, without any authority or lawful warrant, and for no cause against her, by certain officers, who took her by force and against her will into their custody and carried her to the station house or jail of said city, where without any authority and without any warrant of commitment, or commitment of any sort, defendant forcibly and against her will took her into his custody, and maliciously intending to wrong and injure her, at or about the hour of 9:00 o'clock P. M., placed her in a compartment or cell of said jail or station house, and forcibly and without authority detained and imprisoned her during all of the night following, and until the following day, December 25th; that the cell was flooded with water to the depth of four inches, in which she was compelled to stand or walk during all the night, and by reason whereof she was greatly humiliated and embarrassed and suffered great physical and mental anguish, and whereby she has been sick and ill, her health seriously impaired, and she has been compelled to expend large sums of money in being treated and in endeavoring to be cured, and by reason of the premises has been hindered from following and transacting her lawful business, and has been otherwise injured and damaged to the amount of $10,000.00.

The second count contains substantially the same averments, but in addition alleges that as such jailer it was defendant's duty to keep the said jail or station house clean and properly aired and in such condition that one confined therein should be comfortably situated, and to furnish every prisoner or person confined therein with a bed and bedding cleanly and sufficient and properly warmed; that there was at the time of her imprisonment a police matron, whose duty it was to take and have entire care and control of women under arrest, as defendant well knew, and that it was his duty to have summoned said matron immediately upon taking plaintiff to said

jail, that she might attend to plaintiff's care and comfort, but that not regarding his said duty, defendant without any authority therefor, but contriving to injure her, forcibly and against her will confined her in said cell or compartment, which was wholly unfit for occupancy and which was uncleanly and unhealthy, and upon the floor of which was water to a great depth, and which cell or compartment, as defendant well knew, did not contain any bed or bed clothing cleanly and sufficient, and where plaintiff was compelled to remain for the whole of the night of December 24th, the defendant well knowing that there were other cells or compartments on other floors of said jail or station house which were in good and healthful condition, and in which were contained cleanly and sufficient beds and bedding, where plaintiff could have been kept without physical discomfort, but that he declined and refused, though requested by plaintiff, to secure or call said matron, who if called would have ministered to plaintiff's necessities and detained her in a cell or compartment in proper condition. And plaintiff also averred that she was then and always had been a woman of refinement and good repute and had offended against no ordinance or law, as defendant well knew, but that nevertheless he had wrongfully and maliciously caused her to be imprisoned during all the night aforesaid with three vile and wicked women, who were by him allowed during the whole of the night and in the presence of this plaintiff continually to engage and indulge in vile and filthy language and otherwise to annoy, humiliate and embarrass her, and during all the night to occupy said cell or compartment in its unbearable condition and to suffer intense pain therefrom and to be therein humiliated and embarrassed, by reason whereof, etc., as in the first count alleged.

The first question to be disposed of is the objection interposed by defendant's counsel to any consideration of questions involving the merits of the case, for want of any certain bill of exceptions certifying the evidence adduced on the trial. Three bills of exceptions are copied into the record, all properly signed and sealed by the trial judge; but it is contended that in as much as the order entered by the court

mentions only ''her bill of exceptions'', no one of those so certified rather than another can be identified as the one intended and actually certified.

Bill of exceptions No. 1 is a certificate of the evidence taken on the trial, and is the first copied into the record. No. 2 simply shows plaintiff's exceptions to the action of the court in setting aside the verdict and awarding defendant a new trial, which was fully shown by an order entered on July 18, 1925, and requiring no other bill of exceptions. No. 3 simply shows a motion by plaintiff to enter judgment for her on the verdict, and an exception to the ruling of the trial court denying said motion. Manifestly, as all three bills were signed by the trial judge on the same day and copied into the record, all were referred to as ''her bill of exceptions'' in the order entered on the same day they were signed. Certainly the certificate of evidence should be so included, for the plaintiff's rights as to the matters covered by Nos. 2 and 3 were fully protected without bills of exceptions by the prior orders of the court. The bills of exceptions were tendered and signed on a court day, not by the judge in vacation. The omission to specifically identify all three of them in the order was undoubtedly a clerical omission, for the clerk in making up the record says that ''Bills of Exceptions Nos. 1, 2 and 3 referred to in the foregoing order are in the words and figures following, to-wit:'' and then copies all three into the record, and first of all the certificate of the evidence. We are disposed to hold that all these proceedings show substantial compliance with the statute and the prior decisions construing it. Section 9, chapter 131 of the Code, requires that if the action or opinion of the court be upon any question involving the evidence or any part thereof, either upon a motion for a new trial or otherwise, the court shall certify the evidence touching the question. So that if left in doubt as to the bill of exceptions intended, we think it would be our duty in the interest of justice to refer the one called for in the order to that one which the mandate of the statute requires the judge to sign rather than to merely formal bills not necessary to present other questions raised by the parties. Being the para-

mount and important one, that one should be adopted which will best subserve the ends of justice. We have held, construing the statute, that any terms of description indicating with reasonable certainty intention to make a paper a part of a judicial record is sufficient. *Marshall* v. *Stalnaker,* 70 W. Va. 394; *Cable Co.* v. *Mathers,* 72 W. Va. 807, 809; *Eagle Glass & Mfg. Co.* v. *Second Hand Pipe & Supply Co.,* 74 W. Va. 288; *Arnold* v. *Hawkins,* 79 W. Va. 205; *Shipley* v. *Virginian Railway Co.,* 87 W. Va. 139, 143. This liberal rule of construction is not violative of the rule of other cases invoked by counsel for defendant, that to make them a part of the record, bills of exception must not only be signed by the trial judge, but also identified by proper order making them parts of the record, as held in *Hall* v. *Shelton,* 93 W. Va. 592, and prior decisions cited.

Another objection to the consideration of the judgment below awarding defendant a new trial, is that the instructions given and refused are not brought up for consideration by this court. The order of the court submitting the case to the jury does recite the hearing of "all the evidence, *the instructions of the court,* and the arguments of counsel." The instructions are not in the record by bill of exceptions or otherwise. Neither are the arguments of counsel brought in to the record in any manner. It is said, therefore, that we can not see but that the trial court may have committed some error respecting the omitted part of the proceedings, which called for a new trial. But when we look to the order for the grounds of the motion for a new trial, we find the only ground assigned was that the verdict was contrary to the law and the evidence. So that we can now consider, on writ of error, only the grounds assigned for the action invoked in the court below, not some other grounds not assigned. *Hill* v. *Norton,* 74 W. Va. 428; *State* v. *Henaghan,* 73 W. Va. 706; *State* v. *Miller,* 75 W. Va. 591, 594; *State* v. *Noble,* 96 W. Va. 432; *Gregory* v. *Ohio River Railroad Co.,* 37 W. Va. 606; *Gillespie* v. *Modern Woodmen of America,* 101 W. Va. 602, decided at the present term of the court. The only question which plaintiff in error has brought here is the one relied on by defend-

ant below for a new trial, namely, whether the verdict was contrary to the law and the evidence; and this is the only question presented by the record to us for review.

The sole question remaining for consideration then is, was the verdict of $400.00 for plaintiff warranted by the law and the facts proven? First, we allude to the fact that there was no attempt in the trial court to justify the arrest and imprisonment of plaintiff by any lawful process or process of any kind. Plaintiff, who was only a guest in her son's home, and apparently left alone in charge of a baby, then asleep in one of the rooms, entered by men claiming to be officers of the law, was seized by these officers claiming to have a search warrant, not for the son's house, but for that of one McCormick, occupying a part of the same building, and carried away to the city jail in a patrol wagon, and detained in the possession of defendant, the jailer. On arriving at the police station she was requested to register her name in a book kept by the police sergeant; and when asked on cross-examination what had been written opposite her name by some one, she answered the book would show. But she was required against her objection to say what she understood was written there, but by some one else, namely, "Having in my possession intoxicating liquors," and "Resisting an officer." Defendant was present. No examination was had before a United States commissioner or other officer authorized to conduct the same. Defendant admits that without mittimus or any process, lawful or otherwise, but simply at the direction of the police sergeant, who had no authority to commit plaintiff to jail, he took her into custody and thrust her into jail in a cell along with three prostitutes, the condition of which had been rendered unbearable by these women, who had stopped up the commodes and shower baths and flooded the corridor and cell, and where she was compelled to remain until next morning, when she was rescued by the police matron and taken to decent quarters. The apparent brutality of plaintiff's treatment by supposed officers in her arrest can not of course be considered in this action against the jailer, except as known to him and as furnishing a pretense for plaintiff's subsequent

imprisonment by him. He was bound at his peril to be justified by proper process before he accepted responsibility for her imprisonment. He had absolutely no process and does not pretend to have had, but had, as stated, only the ipse dixit of the police sergeant, who had no authority except perhaps to take a bond for plaintiff's appearance to answer some lawful process, not offered in justification of the imprisonment. No charges were ever lawfully brought against plaintiff; she was discharged from the jail without a hearing on any charge. The whole affair from beginning to end seems to have been an outrageous performance by those claiming to represent the majesty of the law, too flagrant for justification on any theory of guilt of this helpless woman. It is almost unthinkable that men in public office would be guilty of such unwarranted conduct. But as already suggested, the defendant can be held responsible only for his own part in the outrage. The plaintiff relies mainly on the alleged breaches of defendant's duty toward her in imprisoning her without process, and mistreating her afterwards, as alleged. The state and municipal laws prescribing defendant's right and duties are relied on. Section 40, chapter 41 of the Code of West Virginia, applicable to all jailers, among other things, requires the jailer to furnish every prisoner with a bed and bedding cleanly and sufficient, and have his apartment warmed when it is proper. Section 732 of the municipal code of the City of Charleston, supplementing the general law, requires that: "The jailer shall keep the jail clean and well ventilated, properly heated and lighted, and in good sanitary condition *at all times,* and free from bugs and vermin." Barnes' Code of Charleston, 1921, p. 323. The declaration, as we have observed, charges a violation by defendant of these requirements of the law.

Section 49e of chapter 47, Code of West Virginia, and section 97 of the Charleston municipal charter, provide for the appointment of a reputable woman, to be known as the police matron. Section 97 of the charter makes it the positive duty of the mayor to make the appointment; and said section 49e of the general law requires such appointment in all cities of five thousand or more inhabitants. And this section of the

general law requires it as one of the duties of the officer in charge, whenever a woman is arrested and taken to the police station to which a matron is attached, if she is not present, to cause her to be immediately summoned, and makes it the duty of the police matron to hold herself in readiness at all hours of the day and night to answer any and all calls from said police station, whenever and as long as any woman is or remains confined therein. And by said section 49e of the general law, it is further provided that each matron shall have, subject to the general control of the head of the police department, the entire care and control of all women under arrest in and at the police station for which she serves, and that she may at any time call upon any police officer for assistance. It is further made the duty of the police matron to attend all sessions of the police court, at any and all times, when any woman is to be arraigned before said court, and that she shall have charge of all women in attendance and awaiting trial or awaiting transfer to any other place of detention. We do not overlook the fact that the statute makes it the duty of the officer in charge of the police station, not specifically the duty of the jailer, to summon the police matron, nor the fact that it is the duty of the matron to attend the police court, not specifically to be present at the police station; but defendant is charged with notice of the law, and that the matron, and not the jailer, is authorized by law to receive women into the jail and to have control over their confinement, and was obliged to take notice that no one could be taken into custody by such matron or himself without lawful process; and he could not overlook his duty in the premises imposed by law, to keep the jail clean and provided with proper bedding, etc. Plaintiff alleges that she called upon him to summon the matron, which he declined. He knew it was the duty of the matron to have charge of plaintiff and of her detention, which he declined to observe, and undertook without authority to discharge badly the matron's duties and neglect his own.

Right of recovery is predicated mainly on (1) imprisonment without warrant of law, (2) the breach of the defendant's duty to keep the jail clean and to furnish plaintiff with

clean and sufficient bedding, etc. While the evidence bearing on the latter question is to some extent conflicting, the jury were taken to view the place of confinement, and on hearing the evidence must have concluded that the charges were sustained, else they could not have returned the verdict they did. And after considering all the evidence we find it ample to justify the verdict. We think that though there was some pretense to shut off and mop up the water which it was admitted was in the cells and apartments of the jail, the result of overflowing commodes and shower baths, no doubt the place was a very disagreeable one to spend the night in, and that it was so is practically conceded by the matron, who on finding plaintiff there the next morning, kindly rescued her and removed her to better quarters, as no doubt she would have done, or provided her with a cleaner and healthier place for the night, if she had been summoned as requested. That the bedding was of doubtful sanitary condition, we think is quite evident from the admissions of the jailer and the matron, for they admit the bed ticks and blankets had not been renovated for as much as a month, and that the cells had been occupied by unclean and unhealthy women in the meantime. Whatever the facts, the jury heard the evidence and made their finding according to their judgment as to what the evidence proved.

Counsel for defendant base their claim for relief against the verdict mainly on the theory that the defendant's duties so breached were quasi judicial rather than ministerial, accompanied by discretion on his part as to the method and manner of their performance, and being a public officer, and no malice or wilful neglect being shown, he is not liable in damages for mistakes in judgment or performance of his duties. On the other hand plaintiff contends that the duties so imposed upon the defendant by statute and ordinance were positive and purely ministerial, and as to which he was without discretion, and that for the breach thereof he is liable for damages sustained by plaintiff, as she alleges and the jury found.

On the defendant's theory we find nothing of a quasi judicial or discretionary nature in the requirements of section 732 of the municipal code of 1921 (Code 1913, c. 18, § 8), that he keep the jail clean and well ventilated, and in good sanitary condition at all times, and free from bugs and vermin; nor in the provisions of section 40 of chapter 41 of the general law, requiring the jailer to furnish every prisoner with a bed and bedding cleanly and sufficient, and to have his apartment warmed when it is proper. These are all positive duties, the reasonable compliance with which there can be no escape from. These are the duties with which he is charged by plaintiff as having so grievously neglected. Accepting as true the conditions as plaintiff described them, what self-respecting citizen, imprisoned as plaintiff was, would not resent the insult and injury by seeking redress in every lawful way? Defendant's counsel in their brief have cited and quoted from numerous decisions in support of their theory as follows: *State* v. *Wade,* 87 Md. 529; *Wilkes* v. *Dinsman,* 7 How. (U. S.) 89; *Kendall* v. *Stokes,* 3 How. 87, 98; *Jenkins* v. *Waldron,* 11 Johns (N. Y.) 114; *Ross* v. *Toledo,* 24 Ohio Cir. Ct. Rep. 540; *Williams* v. *Adams,* 3 Allen (Mass.) 171; *O'Hare* v. *Jones,* 161 Mass. 391. Perhaps all these cases, along with our own case of *Henderson* v. *Smith,* 26 W. Va. 829, support the proposition contended for when the nature of the public duty of the officer involves judgment or discretion in the performance thereof. But where the officer is given no discretion, but his duties are purely ministerial, he has no such immunity from liability for his breaches of duty, and he must answer therefor to those injured thereby. And we emphasize the fact that he has no discretion about imprisoning anyone without lawful process. In *Henderson* v. *Smith, supra,* the plaintiff sought to hold defendant liable as a notary public, for negligently taking and certifying the acknowledgment of a married woman to a deed of trust, whereby he lost the security for his debt. He was denied recovery on the ground that the act of the notary was quasi judicial, for which he could not be held liable in damages. In that case, however, the court distinguishes the rule applied in

that case from the rule applicable to purely ministerial duties
of public officers, the rule in the latter case as stated being
that: "If the duty is simply ministerial, he is liable in dam-
ages to any one specially injured either by his omitting to
perform the task or duty, or by his performing it negligently
or unskilfully." And in that case the court says what is to
some extent applicable to the office of jailer, perhaps, that:
"The same officer may be charged with both judicial and
ministerial duties. When he is in the exercise of the latter,
that is, purely ministerial functions, he is of course not pro-
tected by the judicial privilege. He is liable for negligence,
like any other ministerial officer." And as said in *Sawyer* v.
*Corse,* 17 Grat. 230: "A public officers or other person who
takes upon himself a public employment, is liable to third
persons, in an action on the case, for any injury occasioned
by his own personal negligence or default in the discharge of
his duties." We will not undertake to review all the deci-
sions cited by counsel for the proposition many times affirmed,
that a public officer is liable to anyone injured by the non-
performance or negligent performance of his ministerial
duties, and this without regard to his motives and without
reference to any question of corruption; and whether he has
discharged these imposed duties is generally a question of
fact for the jury. Among the other cases cited and relied
on are: *City of Charleston ex rel. Peck* v. *Dawson,* 97 W. Va.
55; *Tholkes* v. *Decock,* 125 Minn. 507, 52 L. R. A. (N. S.)
142; *Howley* v. *Scott,* 123 Minn. 159, 51 L. R. A. (N. S.)
137; *Foster* v. *Malberg,* 119 Minn. 168, 41 L. R. A. (N. S.)
967; *Strong* v. *Day* (Okla.), L. R. A. 1917-B, 369; *Liene-
mann* v. *Costa,* 140 Ill. App. 167; and *Hobbs* v. *City of Wash-
ington et al.* (N. C.), 84 S. E. 391. The latter case, much re-
lied on, and we think a very pertinent one, is regarded by de-
fendant's counsel as not in point, because, it is contended, it
involved the elements of unlawful arrest and imprisonment.
But does not the case here involve that question also? Where
was the lawful authority shown to arrest and imprison plain-
tiff? None was shown. Indeed it affirmatively appears that

she was taken charge of and imprisoned by defendant without the semblance of lawful process.

We are firmly of opinion that the judgment below should be set aside, the verdict reinstated, and that the judgment which the circuit court should have rendered thereon should be entered here, that plaintiff recover of defendant the sum of four hundred dollars as found by the jury, with interest thereon from the date of the verdict, together with the costs incurred by her in the court below, and that she should also recover of him her costs incurred in this court; and it will be so ordered.

*Judgment reversed; verdict reinstated.*